# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| TERRENCE LAMONT HOLLAND,<br><br>                  Plaintiff,<br><br>          v.<br><br>ANTONIO JOSE OTERO,<br>AARON  PARR,<br>LUCIA GRACIA,<br>JOHN C. FISHER,<br>R. HERNANDEZ, and<br>JULIAN M. MONTEMAYOR,<br><br>                  Defendants. | Case No. 4:25-cv-373 |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PARR'S MOTION TO DISMISS

## TABLE OF CONTENTS

**INTRODUCTION**...............................................................................................................**3**

**ISSUES PRESENTED**.......................................................................................................**3**

**SUMMARY OF ARGUMENT**..........................................................................................**4**

**ARGUMENT**......................................................................................................................**5**

    I.    Mr. Holland's Pleadings Make Out A Prima Facie Case For Tolling Under Section 16.001 And Defendant Parr Has Not Satisfied His Burden Of Proof To Establish Tolling Is Unavailable ................................................................................................................... 5

    II.    Mr. Holland Plausibly Alleges That Defendant Parr Violated His Clearly-Established Fourth Amendment Right To Be Free From Excessive Force. .................................................. 14

    III.    Mr. Holland Plausibly Alleges That Defendant Parr Failed To Intervene In His Fellow Officers' Excessive Force. ....................................................................................................... 20

    IV.    Mr. Holland Plausibly Alleges That Defendant Parr Conspired To Fabricate Evidence Against Mr. Holland, In Violation of Clearly Established Law................................................ 22

    V.    The Court Should Decline To Take Judicial Notice Of Defendant Parr's Voluminous Exhibits Or, Alternatively, Should Take Judicial Notice Of All *Relevant* Judicial Findings In The Proceedings He Points To (Including Those Findings Defendant Parr Has Left Out) And Decline To Consider The Rest. ................................................................................................ 26

    **CONCLUSION** ...............................................................................................................**29**

## INTRODUCTION

This is a Section 1983 action by Terrence Lamont Holland against Antonio Jose Otero, Aaron Parr, and Lucia Gracia—three officers of the Houston Police Department (HPD) who, after stopping Mr. Holland for a minor traffic violation, brutally beat him and repeatedly drive-stunned him with a TASER. Mr. Holland also brings claims against HPD Officer R. Hernandez and former HPD Officer Julian M. Montemayor, who made no effort to stop their colleagues' brutal attack, and Sergeant John C. Fisher, who conspired to help cover up his subordinates' misconduct. The Complaint (Doc. 1) alleges that Defendants violated Mr. Holland's Fourth Amendment right to be free from excessive force and, pursuant to a civil conspiracy, his Fourteenth Amendment right to be free from fabricated evidence. Before the Court is Defendant Parr's motion to dismiss under Fed. R. Civ. P. 12(b)(6), which contends that Mr. Holland fails to state a claim upon which relief can be granted. Doc. 8. Mr. Holland now files this response in opposition.

## ISSUES PRESENTED

(1)     Whether Plaintiff Terrence Holland plausibly alleges facts that make out a prima facie case for tolling of the statute of limitations under Section 16.001 of the Texas Civil Practice and Remedies Code.

(2)     Whether Mr. Holland plausibly alleges that Defendant Aaron Parr violated his clearly established Fourth Amendment right to be free from excessive force.

(3)     Whether Mr. Holland plausibly alleges that Defendant Parr failed to intervene in his fellow officers' excessive force.

(4)     Whether Mr. Holland plausibly alleges that Defendant Parr conspired to fabricate evidence against him, in violation of clearly established law.

(5)     Whether the documents Defendant Parr attaches to his motion are misleading and immaterial to Mr. Holland's claims, such that the Court should decline to take judicial notice of them at the motion to dismiss stage.

## SUMMARY OF ARGUMENT

Mr. Holland has plausibly alleged that, during what should have been (at most) a routine traffic stop for a nonmoving violation, Defendant Parr tackled him to the ground without warning or justification; repeatedly drive-stunned him with his taser; and repeatedly hit, kicked, and punched him, alongside Defendants Gracia and Otero. Mr. Holland further alleges that Defendant Parr did so in the absence of any resistance, threat, or evasion by Mr. Holland and despite the facts that Mr. Holland—a disabled Black man who stands just five feet and five inches tall—was unarmed and had already been searched. After this unlawful attack, Defendant Parr conspired with his fellow officers to fabricate evidence against Mr. Holland in order to cover up their own excessive force. These facts, as further detailed below, make out claims for excessive force and fabrication of evidence—based on Defendant Parr's conduct as both a principal actor and a bystander to his fellow officers' misconduct—as well as for civil conspiracy. The law giving rise to Mr. Holland's claims is clearly established, such that qualified immunity cannot shield Defendant Parr from suit.

In addition, Mr. Holland plausibly alleges that, at the time of Defendants' assault, he suffered from multiple disabilities, including chronic Post-Traumatic Stress Disorder (PTSD), that his PTSD has persisted continuously ever since, and that this prevented him from vindicating his rights within the two-year period following Defendants' assault in December of 2019. Thus, Mr. Holland is entitled to tolling of the two-year statute of limitations on his Section 1983 claims, pursuant to Section 16.001 of the Texas Civil Practice and Remedies Code.

Finally, Mr. Holland argues that the Court should decline to take judicial notice of the twenty-four exhibits Defendant Parr has attached to his motion, because they are, in some instances, irrelevant to the motion to dismiss proceedings, and, in other instances, misleading due to cherry-picking from a more nuanced record.

## ARGUMENT

I.  **Mr. Holland's Pleadings Make Out A Prima Facie Case For Tolling Under Section 16.001 And Defendant Parr Has Not Satisfied His Burden Of Proof To Establish Tolling Is Unavailable.**

Dismissal under Rule 12(b)(6) is not proper unless it appears on the face of Mr. Holland's pleadings that he can prove "no set of facts in support of his claim[s] which would entitle him to relief." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (internal citation omitted). Section 16.001 of the Texas Civil Practice and Remedies Code provides that if a claimant "is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period." Tex. Civ. Prac. & Rem. Code § 16.001(b). A person is "under a legal disability" if they are "of unsound mind." *Id.* § 16.001(a)(2). The statute of limitations is tolled "until the disability is removed." *Helton v. Clements*, 832 F.2d 332, 336 (5th Cir. 1987). This means that the "limitation period may," in some cases, "remain open for the lifetime of the plaintiff." *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 756 (Tex. 1993) (internal citation omitted). As the Texas Supreme Court has recognized, this possibility "does not dictate a different result." *Id.* Rather, it "reflects a considered legislative judgment" that, when a person is of unsound mind, "the strong policy in favor of prompt disposition of disputes must give way to the need to protect" the rights of those who, by nature of their disability, are unable to vindicate them. *Id.*

Where, as here, a plaintiff has made out a prima facie case that he is entitled to statutory tolling of the limitations period, his complaint cannot be dismissed based on contrary and

inconclusive factual assertions by defendants. *E.g.*, *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Mr. Holland plausibly alleged in his complaint that "he was under a legal disability at the time of Defendants' unconstitutional assault, and has remained as such since then." Doc. 1 at 4 n.3 (citing Tex. Civ. Prac. & Rem. Code § 16.001 on the basis of "unsound mind"). He further alleged that "[a]t the time of Defendants' assault," he "suffered from multiple disabilities, including chronic Post-Traumatic Stress Disorder (PTSD)," that his PTSD "has persisted continuously ever since," and that this "prevented him from vindicating his rights within the two-year period following Defendants' assault." *Id.* Thus, Defendant Parr is not entitled to Rule 12(b)(6) dismissal based on the statute of limitations. *See, e.g.*, *Doe v. St. Stephen's Episcopal Sch.*, No. CIV.A. C-08-299, 2008 WL 4861566, at *8 (S.D. Tex. Nov. 4, 2008) (holding that plaintiffs' claims could not be dismissed as untimely under Rule 12(b)(6) where they alleged psychological disabilities rendering them unable to vindicate their legal rights). Defendant Parr will be entitled to present evidence at summary judgment to refute Mr. Holland's invocation of Section 16.001 but, on a motion to dismiss, Mr. Holland's allegations must be taken as true and all reasonable inferences drawn in his favor. *Id.*

Mr. Holland need not rely on expert testimony to survive a 12(b)(6) motion. *See St. Stephen's Episcopal*, 2008 WL 4861566, at *8 (denying motion to dismiss based on the sufficiency of plaintiffs' pleadings alone). And, even at the summary judgment stage, if Mr. Holland's proffered expert testimony and other evidence creates a material dispute of fact as to unsound mind, the issue must be presented to the factfinder. *See Palla v. McDonald*, 877 S.W.2d 472, 473–77 (Tex. App. 1994) (explaining that, at summary judgment, the movant "must conclusively establish the bar of limitations" by "conclusively negat[ing]" any fact issues as to tolling); *Myers v. St. Stephen's United Methodist Church*, No. 01-96-001460-CV, 1998 WL 723887, at *4–5 (Tex.

App. Oct. 8, 1998) (denying summary judgment where plaintiff did not bring suit until eleven years after reaching age of majority due to PTSD and other psychiatric conditions).

Nonetheless, for the avoidance of doubt, Mr. Holland submitted a detailed report by Dr. Jennifer Hughes to support his entitlement to tolling. Doc. 4, Expert Affidavit of Dr. Jennifer Hughes. Dr. Hughes reviewed Mr. Holland's medical records and conducted extensive interviews and psychological testing before determining that at the time of Defendants' assault, his "ability to function independently was severely limited," such that he was "not of sound mind." *Id.* at 10. His condition "significantly worsened," due to Defendants' "re-traumatizing" assault, which ultimately "compounded his impairments in social, occupational, and adaptive functioning." *Id.* Thus, Mr. Holland "would not have been able to follow the multiple and complex steps necessary to file a report on his own behalf against the Houston Police Department." *Id.* Defendant Parr has not presented evidence conclusively refuting Mr. Holland's factual allegations or his expert evidence. *See* Doc. 8 at 6–7. Because Mr. Holland has made out a prima facie case that he is entitled to tolling, any contrary evidence will need to be presented in support of a motion for summary judgment, after all parties have had the benefit of discovery. *Wise v. Anderson*, 359 S.W.2d 876, 880–81 (1962) (entitlement to tolling is a question of fact); *McDonald v. Evans*, 217 S.W.2d 870, 871 (Tex. Civ. App. 1949) (same); *Palla*, 877 S.W.2d at 473–77 (same).

As the Texas Supreme Court has also repeatedly recognized, "tolling serves the constitutional goal of ensuring that the statute of limitations does not unreasonably deny those with mental disabilities access to our courts." *Draughon v. Johnson*, 631 S.W.3d 81, 94 (Tex. 2021) (citing Tex. Const. art. I, § 13). This exception seeks to "insure that [a legally disabled person's] right to bring suit will not be precluded by the running of a limitations statute prior to removal of

[their] disability." *Ruiz*, 868 S.W.2d at 755 (citing *Johnson v. McLean*, 630 S.W.2d 790, 793 (Tex. App. 1982)).

The question under Section 16.001 is *not* whether Mr. Holland could have filed a lawsuit within the limitations period. The question is whether he had the ability to "participate in, control, or even understand the progression and disposition of [a] lawsuit." *Ruiz*, 868 S.W.2d at 755. As alleged, he did not. Doc. 1 at 4 n.3. To the contrary, Mr. Holland alleged that "[a]t the time of Defendants' assault," he "suffered from multiple disabilities, including chronic Post-Traumatic Stress Disorder (PTSD)," that his PTSD "has persisted continuously ever since," and that this "prevented him from vindicating his rights within the two-year period following Defendants' assault." *Id.*; *see, e.g.*, *Myers v. St. Stephen's*, 1998 WL 723887 at *4–5 (reversing trial court's grant of summary judgment for defendant where plaintiff presented evidence that he suffered from PTSD and other psychiatric conditions at the time the cause of action accrued); *Rollins v. S. Baptist Convention*, 628 S.W.3d 583, 596 (Tex. App. 2021), *review denied* (Apr. 1, 2022) (same).

Thus, contrary to Defendant Parr's assertions, the fact that Mr. Holland previously filed an unsuccessful, bare bones, handwritten complaint *pro se* in Texas state court does not negate his entitlement to tolling. Notably, Defendant Parr cites no case law in support of this argument. Indeed, as the Texas Supreme Court has made clear, "the mere commencement of a lawsuit by, or on behalf of, a legally incapacitated individual is, considered alone, insufficient to deny the protection of the tolling provision." *Ruiz*, 868 S.W.2d at 753, 756 (holding that plaintiff was entitled to indefinite tolling under Section 16.001 based on "severe and permanent head injuries" that rendered him of unsound mind); *accord Palla*, 877 S.W.2d at 475 (holding that plaintiff was entitled unsound mind tolling based on "profound neurocognitive impairment").

Together with Mr. Holland's factual allegations, Section 16.001 precludes dismissal of the present lawsuit simply because Mr. Holland sought to vindicate his rights at a time when he was ultimately ill-equipped to do so by nature of his unsound mind. *See* Doc. 8 at 7–8. Defendant Parr's exhibits show that Mr. Holland did not file his *pro se* complaint until more than two years after their unconstitutional conduct. Doc. 8-2 at 2. This, if anything, supports Mr. Holland's entitlement to tolling, because there is no evidence that he had any understanding of the limitations period and—more importantly—no evidence that he had any awareness of his right to statutory tolling under Section 16.001. Nothing in his pleading refers to Section 16.001. Mr. Holland knew he had been hurt by HPD officers, but that does not establish that he was able to "participate in, control, or even understand" his claims or "the progression . . . of [a] lawsuit." *See Ruiz*, 868 S.W.2d at 755.

Moreover, the *pro se* complaint does not even name Defendant Parr—the defendant who repeatedly drive-stunned Mr. Holland with his taser in violation of the Fourth Amendment. *See* Doc. 1 ¶¶ 51–53. This is because Mr. Holland, due to his legal disability, was wholly unable to adequately investigate his claims by, *inter alia*, securing and making competent use of public records from HPD. Not understanding relevant law, Mr. Holland incorrectly named HPD as a defendant. *See, e.g.*, *McAfee v. Houston Police Dep't*, No. CV H-19-112, 2019 WL 12021829, at *1 (S.D. Tex. Mar. 19, 2019) (dismissing claims against HPD because, as a subdivision of the City of Houston, it cannot be sued). Nor did he know to allege any basis for *Monell* liability. Nothing in the prior complaint establishes that Mr. Holland was of sound mind.

Similarly, Mr. Holland's entitlement to tolling is unaffected by the fact that undersigned counsel informed him, before assuming pro bono representation, that he may wish to seek a continuance in his *pro se* case. *See* Doc. 8 at 7 (citing Doc. 8-12). Indeed, the presiding state judge

urged Mr. Holland to find representation before the motion to dismiss hearing. Doc. 8-12 at 2 ("Judge Davis recommended that I find an attorney before my next court date."). This suggests, if anything, that the judge doubted whether Mr. Holland could adequately represent himself, let alone participate in, understand, or control the progression of the lawsuit. *See Ruiz*, 868 S.W.2d at 755. In any event, neither undersigned counsel nor any lawyer then appeared to represent Mr. Holland. Pro bono representation is a scarce resource, particularly in police misconduct cases, so lawyers declining to enter an already-filed case (facing a motion to dismiss) creates no inference about Mr. Holland's state of mind, which is the only relevant question.

*Palla v. McDonald* is instructive on this point. 877 S.W.2d 472. The *Palla* court considered whether the plaintiff's multiple prior lawsuits against other defendants, brought by the plaintiff's husband as her "next friend," negated her entitlement to statutory tolling. *Id.* at 477. The court expressly rejected the alleged bar to tolling under Section 16.001, stating: "Applying *Ruiz* to the present case, we conclude that the mere fact suit was filed on behalf of Mrs. Palla against *other* defendants is not sufficient to deny the protection of the tolling of the statute of limitations on Mrs. Palla's cause of action against a *different* defendant, appellee McDonald." *Id.* (emphasis added). Notably, Mr. Holland's *pro se* suit did not name Defendant Parr—precisely because Mr. Holland was not competent to investigate and litigate his claims—but even if it did, that would not bar tolling either. Indeed, the Texas Supreme Court in *Ruiz* held that "even filing suit against the *same defendant* two different times did not affect the tolling of the statute of limitations." *Palla*, 877 S.W.2d at 477; *Ruiz*, 868 S.W.2d at 753.

Defendant Parr's other assertions about Mr. Holland's legal disability are misguided and premature. *Ruiz* and its progeny ask whether a plaintiff can participate in, control, and understand the progression of a lawsuit—not the extent to which he can perform other, more routine tasks

such as driving to the corner store, calling one's girlfriend for help, or asking to speak with a police supervisor when stopped for a traffic violation. *Compare* Doc. 8 at 7 (arguing that Mr. Holland's ability to do these things is evidence he was of sound mind), *with Ruiz*, 868 S.W.2d at 753 (setting forth the proper standard).

*Myers v. St. Stephen's* addresses this issue head-on. There, the plaintiff brought suit eleven years after reaching the age of majority and twelve years after defendant's tortious conduct ended, asserting that PTSD and other psychiatric and cognitive conditions entitled him to statutory tolling. 1998 WL 723887, at *3. The court ultimately held that plaintiff's claims were not time-barred as a matter of law—despite evidence that during the tolling period, he obtained a driver's license and GED, joined the navy, held several jobs (including one as a manager), and communicated with others about the basis for his claims. *Id.* at *4.

Moreover, the facts Defendant Parr points to suggest, if anything, that Mr. Holland was particularly vulnerable by nature of his disabilities. Indeed, Mr. Holland alleges that Defendants "refused to stop" their unconstitutional attack "even after Ms. Reyes informed them that Mr. Holland is disabled and expressed her fear that Defendants would kill him." Doc. 1 ¶¶ 6, 70. Mr. Holland further alleges that Defendants' force was unnecessary considering he was "a 5'5" disabled Black man suspected only of a minor traffic violation," and that he "was unarmed, had already been searched, and posed no threat of harm." *Id.* ¶ 105. To the extent Defendants' arguments on this front could raise a genuine issue of material fact, that is a question for the factfinder, when all available evidence has been adduced and presented.[1]

---

[1] Mr. Holland presented an expert report in anticipation of Defendants' Rule 12(b)(6) motions, as a show of good faith that he is able to prove his disability. Doc. 4. However, this is not the only evidence he anticipates presenting to the factfinder. Mr. Holland intends to further support his claim for tolling through medical and other business records, fact and expert testimony, and any other relevant evidence gathered in discovery.

Defendant Parr's argument that Mr. Holland's guilty plea to a misdemeanor negates his entitlement to statutory tolling is similarly counterfactual and premature. *See* Doc. 8 at 7–8. Indeed, court records from the very same proceeding show that Mr. Holland was flagged for "suspected mental illness or intellectual disability" under Tex. Code Crim. Proc. art. 16.22, based on evidence that he was found mentally ill or intellectually disabled by a designated agency within the preceding year. *See* Exhibit 1, Early Identification of Suspected Mental Illness or Intellectual Disability, Case No. 234746001010. This is precisely why Defendant's cherry-picked evidence cannot "conclusively negate" Mr. Holland's allegations regarding his mental state—and certainly not at the motion to dismiss stage. *Palla*, 877 S.W.2d at 474.

As an initial matter, a plea taken in 2021 cannot displace Mr. Holland's assertion that he was of unsound mind in 2019, when his cause of action accrued. *See Myers v. St. Stephen's*, 1998 WL 723887, at *4 (reversing grant of summary judgment because defendant's contrary evidence did not negate that plaintiff was of unsound mind "*at the time his cause of action accrued*"). Secondly, the case Defendant Parr cites in support of this argument involved a challenge to unsound mind tolling based on the plaintiff's competency to stand trial for murder. Doc. 8 at 7 (citing *Eggers v. El Paso Police Dep't*, No. EP-08-CA-126-PRM, 2008 WL 4455917 (W.D. Tex. Sept. 15, 2008)). Here, by contrast, Defendant Parr's challenge is based on Mr. Holland's *guilty plea* to a misdemeanor—not a finding of competency to stand *trial* for a charge as serious as murder. *See* Docs. 8-22, 8-23, 8-24.

Moreover, indigent persons, like Mr. Holland, will often plead guilty, particularly to lower-level offenses, rather than await trial indefinitely behind bars. *See, e.g.*, Will Dobbie, Jacob Goldin & Crystal S. Yang, *The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108(2) Amer. Econ. Rev. 201, 203

(2018); Nick Petersen, *Do Detainees Plead Guilty Faster? A Survival Analysis of Pretrial Detention and the Timing of Guilty Pleas*, 31(7) Crim. Just. Pol. Rev. 1015 (2020) (finding that people detained pretrial plead guilty nearly three times faster than those not in custody). In Harris County, where Mr. Holland was detained, this phenomenon is well-known and potent. In *ODonnell v. Harris County*, for example, the court found that 84 percent of misdemeanor arrestees plead guilty, compared to just 49 percent of those release pretrial, reflecting a coercive system "that pressures misdemeanor defendants to plead guilty at or near their first appearances because that is the only way to secure timely release from detention." 251 F. Supp. 3d 1052, 1105 (S.D. Tex. 2017).

Indeed, disabled people like Mr. Holland are particularly vulnerable to the coercive effects of the plea bargaining system. Cognitive disabilities, mental illness, and substance abuse can each make it difficult to understand the effects of a guilty plea. *See, e.g.*, Cynthia Alkon, *Plea Bargain Negotiations: Defining Competence Beyond* Lafler *and* Frye, 53 Am. Crim. L. Rev. 377, 399 n.179 (2016); *see* Doc. 4 at 1–3 (expert report detailing Mr. Holland's history of head trauma, neurocognitive issues, and psychiatric conditions).

Finally, Harris County Jail, where Mr. Holland was confined on this charge, is overcrowded and dangerous—especially for disabled people—so it stands to reason that he, a multiply disabled man of small stature, would be willing to forgo a jury trial to secure immediate release. *See, e.g.*, Alex Stuckey & Marie D. De Jesús, *Texans with Mental Illnesses Are Dying in Houston-Area Jails. They Didn't Need to Be There.*, Houston Landing (Feb. 8, 2023) ("The Harris County Jail has become a particularly dangerous place to end up. For years, it has struggled with overcrowding and has run afoul of requirements set by the Texas Commission on Jail Standards, such as failing to ensure that medical professionals review prescription medications for inmates."),

https://perma.cc/5MDZ-P78N. It similarly stands to reason that he would forgo seeking a finding of mental incompetency, which can delay case resolution for months or even years, in order to get home to his loved ones and support network sooner. Texas Jud. Comm'n on Mental Health, *Eliminate the Wait: Rightsizing Texas Competency Restoration Services*, https://perma.cc/NPB3-4WC8 (last visited May 8, 2025) ("It can take months to over a year from the time incompetency is raised to the final disposition of the criminal case."); Neena Satija, *Houston Man Accused of Killing Joel Osteen's Great-Aunt Spent 18 Years in Jail Without a Trial*, Houston Chronicle (Mar. 18, 2025) (describing "endless loop of psychological assessments and waitlists for treatment beds while attorneys argued over his competency to stand trial"), https://perma.cc/VR5H-XBB8.   In any event, like Defendant Parr's other arguments in contravention of Mr. Holland's pleadings, these questions are inappropriate for resolution on a motion to dismiss and can be adequately tested only when all parties have the benefit of discovery.

II.    **Mr. Holland Plausibly Alleges That Defendant Parr Violated His Clearly-Established Fourth Amendment Right To Be Free From Excessive Force.**

To state a claim for excessive force, a plaintiff must plausibly allege that (1) he suffered an injury due to (2) force that was clearly excessive and (3) clearly unreasonable. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)). The questions of whether force is "clearly excessive" and "clearly unreasonable" are "often intertwined" such that they should generally be considered together. *Id.* (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). Factors to consider include "the severity of the crime at issue," whether the plaintiff "pose[d] an immediate threat to the safety of the officers or others," and whether he was "actively resisting arrest" or "attempting to evade arrest by flight." *Graham v. O'Connor*, 490 U.S. 386, 396 (1989).

To overcome qualified immunity, a plaintiff must also show that the right at issue was "clearly established" at the time of the violation. *Brumfield v. Hollins*, 551 F.3d 322, 326–27 (5th Cir. 2008). To do so, he "must be able to point to controlling authority—or a "robust 'consensus of persuasive authority'"—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359 (5th Circuit 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). However, a case directly on point is not required. *Cooper*, 844 F.3d at 524). "The law can be clearly established despite notable factual distinctions between the precedents relied on" and the case at hand, provided that the prior decisions gave "fair warning" that the alleged conduct violated a constitutional right. *Id.*

Mr. Holland alleges he had gone out to take his nephew to the corner store when Defendant Otero stopped him for a suspected traffic violation one block from his nearby home. Doc. 1 ¶¶ 28–29. When he realized he was being pulled over, he called his then-girlfriend Lisa Reyes to witness the encounter, "in the hopes that her presence would deter the police from escalating to violence." *Id.* ¶ 35. He feared that Otero might harm him—a Black disabled man who stands five feet and five inches tall—or his nephew Adrian, who is also disabled and legally blind. *Id.* ¶¶ 3, 33–35. Mr. Holland pulled over and immediately complied with Defendant Otero's order to get out of the car. *Id.* ¶ 37. Otero informed Mr. Holland of an issue with his license or registration and said he was placing him under arrest. *Id.* ¶ 38.[2]

---

[2] Defendant Parr characterizes Mr. Holland's allegations about the basis for the stop as "deliberately vague." Doc. 8 at 9. On the contrary, Mr. Holland's pleadings show that he was himself confused about the purported issue and never got the clarity he was seeking when he asked to speak with a supervisor because Defendants Parr and Gracia resorted to immediate and overwhelming force upon arrival. Doc. 1 ¶¶ 41, 49–54. Moreover, Defendants never charged Mr. Holland with a traffic violation or issued a traffic ticket for the purported license or registration issue. *Id.* ¶ 83. Discovery is thus necessary to understand whether Defendant Otero had legitimate cause to stop Mr. Holland in the first place.

Otero then asked whether Mr. Holland had any weapons, to which Mr. Holland responded no, stretching his arms out to his sides to show he was unarmed. *Id.* ¶ 39. Mr. Holland complied with a pat down search and Otero confirmed that he was unarmed. *Id.* ¶ 40. At that point, Mr. Holland asked to speak with a supervisor to clear up any potential issues with his license or registration, hoping that he and his nephew could go home safely. *Id.* ¶¶ 41–42. Otero, who was visibly angry, told Mr. Holland that he had no right to speak with a supervisor, grabbed Mr. Holland by the forearms, and shoved him towards his parked car. *Id.* ¶¶ 43–44. Mr. Holland pulled away from Otero's grasp and stepped backwards, reiterating that he had done nothing wrong. *Id.* ¶ 45.

Otero radioed a request for additional HPD units. *Id.* ¶ 47. Meanwhile, Otero did not take cover or do anything else that would suggest he feared for his safety or the safety of others. *Id.* ¶ 48. The complaint does not allege what Otero communicated over the radio because Mr. Holland does not have access to that information. *See* Doc. 4 at 3 (describing Mr. Holland's complex medical history, including significant hearing impairments). While waiting for the other officers to arrive, Defendant Otero did not touch or otherwise attempt to restrain Mr. Holland—the two simply stood. *See* Doc. 1 ¶¶ 45–48.

Defendants Parr and Gracia arrived several minutes later, at which point Mr. Holland was standing calmly with his arms raised in a gesture of surrender, posing no threat. *Id.* ¶¶ 47, 49–50. He reiterated his desire to speak with a police supervisor but was prevented from saying more because Defendants Gracia and Parr immediately grabbed him, kicked him, and pulled him to the ground. *Id.* ¶ 51. Defendant Parr repeatedly drive-stunned Mr. Holland with his taser, *id.* ¶¶ 53, 60, and, along with Defendants Gracia and Otero, repeatedly hit, kicked, and punched Mr. Holland as he cried out in pain, *id.* ¶ 57. Defendants continued their assault despite the facts that Mr.

Holland was unarmed, was not resisting, had already been searched, and was physically incapacitated by the bodyweight of three armed officers, with at least two other armed officers watching. *Id.* ¶¶ 39–40, 57, 59, 71–73. Ms. Reyes informed Defendants that Mr. Holland is disabled, but they ignored this and every one of her pleas that Defendants stop their assault—even as she expressed her fear that they might kill him. *Id.* ¶¶ 64, 68, 70. Instead, Defendant Hernandez detained Ms. Reyes to prevent her from further recording on her cellphone while Defendants Parr, Gracia, and Otero continued their attack. *Id.* ¶¶ 75–79.

Defendants' excessive force caused Mr. Holland a split lip, bleeding ear, and wounded rib cage, along with intense emotional distress and psychological trauma. *Id.* ¶ 93; Doc. 4  at 10 ("While he previously managed some daily activities with considerable difficulty, the re-traumatization [of Defendants' assault] has compounded his impairments in social, occupational, and adaptive functioning, rendering him almost entirely dependent on an aide for basic activities of daily living.").

Mr. Holland has stated a claim for excessive force. And, on the facts alleged, with all reasonable inferences drawn in Mr. Holland's favor, Defendant Parr is not entitled to qualified immunity. The Fifth Circuit has repeatedly held, in a variety of factual circumstances, that using a taser on a person who is not actively resisting arrest—or who is exhibiting, at most, "passive resistance"—violates the Fourth Amendment. *See Cobbins v. Sollie*, No. 22-30692, 2023 WL 4015303, at *6 (5th Cir. June 14, 2023) (collecting cases dating back to 2005 and reversing grant of summary judgment to defendants). Here, Defendants' force arose in the context of what should have been a routine traffic stop for a nonmoving violation. When Defendant Otero initiated the stop, Mr. Holland pulled over, got out of the car as ordered, and complied with a patdown search to confirm he was unarmed.

After being searched, Mr. Holland—who has a history of head trauma and cognitive impairments, Doc. 4 at 3, 5, 7–10—requested a supervisor to better understand the basis for the stop and clear up any registration issues. Otero refused to honor this reasonable request, instead needlessly escalating the situation by grabbing Mr. Holland's arms and shoving him in anger. While Mr. Holland did pull away from Defendant Otero's grasp and reiterate his request to speak with a supervisor, he did not try to flee, strike or otherwise harm Otero, or communicate any intention to do so. On the contrary, he kept his hands raised in a gesture of surrender and continued to verbalize his uncertainty about the basis for the stop. Moreover, by the time the other Defendants arrived and decided to assault Mr. Holland along with Defendant Otero, Mr. Holland was not engaging in *any* form of resistance. He was simply standing still next to Otero.

Fifth Circuit precedent makes clear that what Defendant Parr did—immediately tackling Mr. Holland to the ground before repeatedly tasing and beating him—amounted to excessive force. Relying on case law dating back to 2005, the Fifth Circuit stated in *Cobbins v. Sollie*: "This precedent makes it clear to all reasonable officers that tasing a subject who is suspected of no more than a misdemeanor, is pinned to the ground, is surrounded by law enforcement officers and unable to escape, is unarmed, and is offering no more than passive resistance, amounts to excessive force in violation of the Fourth Amendment." 2023 WL 4015303, at *6 (5th Cir. June 14, 2023) (citing *Darden v. City of Fort Worth*, 880 F.3d 722, 725 (5th Cir. 2018); *Ramirez v. Guadarrama*, 3 F.4th 129, 379 (5th Cir. 2021); *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012); *Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012); *Autin v. City of Baytown*, 174 F. App'x 183, 186 (5th Cir. 2005)).

Indeed, in *Anderson v. McCaleb*, the Fifth Circuit reversed a grant of summary judgment to officers who continued to tase and beat the plaintiff even after he was no longer resisting arrest—

despite the undisputed facts that the plaintiff had initially fled and was carrying an unidentified object in his hand that officers believed to be a weapon. 480 F. App'x 768, 773 (5th Cir. 2012). Here, by contrast, Mr. Holland made no attempt to flee and was unarmed (as confirmed by Defendant Otero's patdown search), with his hands raised in a gesture of surrender at the very moment Defendant Parr arrived. Thus, as alleged, Defendant Parr acted in clear contravention of Fifth Circuit authority when he tackled Mr. Holland to the ground without warning, repeatedly drive-stunned him with his taser, and (alongside his fellow officers) repeatedly hit, kicked, and struck him. *Id.*; *Cobbins,* 2023 WL 4015303, at *6. No reasonable officer would do the same.

Contrary to Defendant Parr's assertions, Mr. Holland pulling away from Defendant Otero was not "active resistance" justifying overwhelming force. Doc. 8 at 9. First, the Fifth Circuit made that clear as early as 2013 when it held that a suspect pulling his arm out of an officer's grasp was "insufficient to find an immediate threat to the safety of the officers." *Ramirez v. Martinez*, 716 F.3d 369, 378–79 (5th Cir. 2013). It thus rejected defendants' claim of qualified immunity where, the plaintiff alleged, they tased him twice after he was already on the ground and subdued. *Id.* at 379–80. Any perceived threat on the part of Defendant Otero would be further undercut by Mr. Holland's small stature, that he was unarmed, and that he had already been searched. Indeed, Otero did not take cover or do anything else to suggest he perceived any threat.

In any event, at the time Defendant Parr arrived, Mr. Holland was not engaged in *any* resistance. The Fifth Circuit has repeatedly made clear that "[f]or an officer's force to be reasonable, it must be commensurate with the suspect's level of *contemporaneous*, active resistance." *See, e.g.*, *In Re Joseph v. Bartlett*, 981 F.3d 319, 335 (5th Cir. 2020) (emphasis added). When resistance ceases, any lawful justification for using force ceases as well. *Bagley v. Guillen*, 90 F.4th 799, 803 (5th Cir. 2024) ("[W]here a suspect initially resists, force must be reduced once

[he] has been subdued. Once a suspect is subdued and no longer resisting, an officer's subsequent use of force is excessive." (citations omitted)). Because Mr. Holland exhibited no resistance at all from the time Defendant Parr arrived on the scene, qualified immunity cannot shield Defendant Parr from suit.

### III.    Mr. Holland Plausibly Alleges That Defendant Parr Failed To Intervene In His Fellow Officers' Excessive Force.

Mr. Holland has also stated a claim against Defendant Parr for failure to intervene in his fellow officers' use of excessive force. Specifically, Parr failed to intervene: (1) when Defendant Otero "joined in the pile-on, grabbing Mr. Holland and striking him in the head with his knee" and "then jumped on top of Mr. Holland and struck him with his elbow," Doc. 1 at ¶ 56; and (2) when Defendants Gracia and Otero "repeatedly hit, kicked, and punched Mr. Holland, using their hands, fists, elbows, and knees to strike him, *id.* at ¶ 57. On the facts alleged, with all reasonable inferences drawn in Mr. Holland's favor, Defendant Parr is not entitled to qualified immunity on that claim either.

An officer is liable for failure to intervene in excessive force when he (1) knew a fellow officer was using excessive force, (2) was present at the scene, and (3) had a reasonable opportunity to prevent or mitigate the harm but, nevertheless, (4) chose not to do so. *Timpa v. Dillard*, 20 F.4th 1020, 1038–39 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2755 (2022) (citations omitted).

Mr. Holland has plausibly alleged that Defendant Parr was physically present and knew his fellow officers' use of force was excessive. As explained in Section II, *supra*, the Fifth Circuit has repeatedly made clear that it is unconstitutional to tase and beat a person who is unarmed, suspected only of a minor traffic violation, physically incapacitated by the body weight of three armed officers, and not actively resisting. *See, e.g.*, 2023 WL 4015303, at *6 (collecting cases). As to whether Defendant Parr had an opportunity to intervene, nothing prevented him from doing

so. At any time he could have told his fellow officers that enough was enough, and that further force was neither necessary nor appropriate. As set forth in Mr. Holland's pleadings, he simply chose not to do so.

Defendant Parr's arguments to the contrary rely on fact-intensive questions inappropriate for resolution on a motion to dismiss. In an attempt to sidestep this reality, Defendant Parr misstates Fifth Circuit law, claiming it is "well settled" that an officer can never be held liable both as a principal actor and a bystander in an excessive force case. Doc. 8 at 19 & n.25 (citing *Soto v. Bautista*, No. 21-40803, 2023 U.S. App. LEXIS 7160 (5th Cir. 2023) (unpublished); *Freeman v. City of Fort Worth*, No. 4:10-CV-888-Y, 2011 U.S. Dist. LEXIS 72963, at *29-30 (N.D. Tex. 2011)). But the cases he cites do not stand for that proposition. Both *Soto* and *Freeman* involved fact-intensive determinations made at summary judgment. Both relied on video or testimonial evidence to determine whether the defendants had a reasonable opportunity to prevent the harm inflicted by their fellow officers' use of force. *Soto*, 2023 WL 2624785, at *6 (concluding "that the video evidence conclusively demonstrates" that the defendants "could not have reacted quickly enough" to prevent one another from carrying out specific acts of violence); *Freeman*, 2011 U.S. Dist. LEXIS 72963, at *29–30 (relying on video and audio recordings, and affidavit testimony).

And while *Freeman* does use the phrase "as a matter of law" when discussing bystander liability, it does so in *dicta*, only after determining that the defendants did not use excessive force at all, such that there could be no bystander liability regardless of defendants' opportunity to intervene. *Id.* ("Freeman also asserts claims for bystander liability against each of the officers for failing to prevent [the] use of the taser against him. Without a finding of excessive force, however, there is nothing for which the bystander officers may be liable.").

In any case, Defendant Parr cannot have it both ways. He argues in his motion to dismiss that he could not have intervened if he himself was the one using force but, in an earlier filing, he "den[ied] all the Plaintiff's allegations," including that he and his fellow Defendants "brutally beat [Mr. Holland] and repeatedly drive-stunned him with a TASER." Doc. 11 at 2–3; *see* Doc 1 ¶ 1 (the source of the allegations Mr. Holland recounts in Doc. 11). By alleging that none of Mr. Holland's allegations are true, Defendant Parr has only underscored the need for discovery to determine their veracity—namely, whether and which Defendants used force, whether that force was excessive, and what, if any, opportunity Defendant Parr had to prevent or mitigate the harm caused by his fellow officers' use of force.

## IV.   Mr. Holland Plausibly Alleges That Defendant Parr Conspired To Fabricate Evidence Against Mr. Holland, In Violation of Clearly Established Law.

"Fabrication of evidence, even if it does not ultimately result in conviction, is a violation of the Fourteenth Amendment." *Vela v. Lewis*, No. 4:23-CV-03376, 2024 WL 990058, at *4 (S.D. Tex. Mar. 6, 2024) (citing *Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015), judgment vacated *sub nom. Hunter v. Cole*, 580 U.S. 994 (2016), opinion reinstated in relevant part, 905 F.3d 334 (5th Cir. 2018)). To state a claim for fabrication of evidence, a plaintiff must show that (1) the defendants fabricated statements or other evidence, (2) for the purpose of obtaining a charge against the plaintiff, and (3) that the fabricated evidence influenced the decision to charge. *Id.* at *4. A plaintiff can make this showing by, for example, alleging facts that "officers either made or endorsed false or misleading statements" whether to a prosecutor or grand jury, in a probable cause affidavit, or in their incident reports and supplements. *Id.*

The constitutional right to be free from deliberate fabrication of evidence was clearly established in this Circuit as early as 2010. *Cole I*, 802 F.3d at 773 (holding law was clearly established at the time of defendants' conduct in 2005). And, contrary to Defendant Parr's

assertions, the alleged presence of probable cause does not shield him from liability or suit for fabrication of evidence. *Id.*; *see* Doc. 8 at 10. Indeed, as the Fifth Circuit has recognized: "To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false [evidence] at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." *Cole I*, 802 F.3d at 773 (citation omitted); *accord Vela,* 2024 WL 990058, at *5 ("Even assuming that the officers had probable cause to arrest Vela for interference with public duties, that fact is irrelevant for the purposes of this claim. (citing *Cole I*, 802 F.3d at 773)).

An officer can also be held liable for failing to intervene in another officer's fabrication of evidence, provided he was (1) present when the fabricated statements were made and (2) had a reasonable opportunity to intervene, but (3) chose not to do so. *Vela*, 2024 WL 990058, at *6 (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *Villegas v. City of El Paso*, No. EP-15-CV-00386-FM, 2020 WL 981878, at *9 (W.D. Tex. Feb. 28, 2020), *aff'd sub nom. Villegas v. Arbogast*, 836 F. App'x 334 (5th Cir. 2021)).

In addition, officers who endorse or acquiesce to fabricated statements can be held liable for the same conduct on a civil conspiracy theory. *Id.* at *7. To state a claim for civil conspiracy, a plaintiff must allege facts that, if true, evidence an agreement by the defendants to commit an illegal act. *Id.* Conspiracies are "rarely evidenced by explicit agreements." *Mack v. Newton*, 737 F.2d 1343, 1350–51 (5th Cir. 1984). Rather, they are "usually proved by circumstantial evidence." *Zervas v. Faulkner*, 861 F.2d 823, 836 (5th Cir. 1988). Thus, the absence of direct evidence of a conspiracy does not warrant dismissal. *See id.* Moreover, a plaintiff need not show that a conspirator's actions alone "actually caused a constitutional violation." *Bevill v. Fletcher*, 26 F.4th 270, 284 (5th Cir. 2022). The agreement to fabricate evidence in violation of the Fourteenth

Amendment is sufficient to state a claim. *Morales v. Carrillo*, 625 F. Supp. 3d 587, 607 (W.D. Tex. 2022). This clearly established law. *Id.* (quoting *Bevill v. Fletcher*, 26 F.4th 270, 283 (5th Cir. 2022) (cleaned up)).

Here, Mr. Holland's pleadings suffice to state a Fourteenth Amendment claim against Defendant Parr under each of these theories of liability: fabrication of evidence, failure to intervene in his fellow officer's fabrication of evidence, and conspiracy to fabricate evidence. Specifically, Mr. Holland alleges that, after Defendants assaulted him in violation of his Fourth Amendment rights, Defendants "conspired to fabricate evidence" to charge him with assault on an officer, despite the fact that Mr. Holland "did not assault Otero or anyone else," nor did he actively resist arrest. Doc. 1 ¶¶ 82–91, 110–15. Defendants carried out this conspiracy by falsely claiming in their incident reports and supplements that Mr. Holland assaulted Defendant Otero, and repeating these falsehoods in a probable cause affidavit. *Id.* ¶¶ 84, 88, 111. They also repeated these falsehoods verbally to the Harris County District Attorney's Office. *Id.* ¶ 111. They did so for the shared purpose of "concealing and justifying [their] excessive force violations" by obtaining a violent charge against Mr. Holland. *Id.* Defendants were successful in securing this charge. *Id.* ¶ 13.

The content of Defendants' statements evince their intent to deceive and mislead. For example, Defendant Otero complained of a small laceration to his left elbow, but elsewhere he acknowledged that he incurred this injury while elbow striking Mr. Holland in the face. *Id.* ¶ 11. Similarly, Defendant Otero complained of a possible strained pectoral muscle, apparently as evidence of Mr. Holland's alleged assault. *Id.* ¶ 84. But this injury was likely caused by Otero's own decision to join his fellow officers in piling on Mr. Holland and repeatedly striking him with his hands, fists, elbows, and knees. *Id.* ¶ 10, 85. Otero alleged no other injuries as a result of Mr. Holland's purported assault. *See id.* ¶¶ 82–91, 110–15.

Defendant Parr's false statements—along with his endorsement of his fellow officers' false statements—for the purpose of obtaining a charge against Mr. Holland, suffice to state a fabrication claim. *E.g.*, *Vela*, 2024 WL 990058, at *4. Moreover, Mr. Holland's pleadings establish or create an inference that Defendant Parr was present when his fellow officers' made their own false statements and that he did so in coordination with them, rather than intervening to stop them. *Morales v. Carrillo*, 625 F. Supp. 3d 587, 608 (W.D. Tex. 2022) (denying defendants summary judgment on conspiracy claim based on circumstantial evidence of coordination between officers). This suffices to state a claim for failure to intervene. Finally, these facts, coupled with Defendants' shared motive of concealing their excessive force violations, along with their detention of Ms. Reyes to prevent her from further recording, evidence a conspiratorial agreement to participate in this cover up, in violation of the Fourteenth Amendment. Doc. 1 ¶ 75–79; *Zervas*, 861 F.2d at 836.

The intracorporate conspiracy doctrine does not shield Defendant Parr, because he and his fellow officers were acting outside of their scope of authority. When police officers "act for their own personal purposes," such as to avoid discipline or personal liability for using excessive force, "they become independent actors," who can conspire with other members of the department that employs them. *Vela*, 2024 WL 990058, at *7 (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981)). "This exception frequently applies where it is alleged that police officers engaged in a conspiracy to conceal the use of excessive force." *Id.* (collecting cases).

Here, Defendant Parr was the one who repeatedly drive-stunned Mr. Holland with his taser, despite a total lack of resistance or threat from Mr. Holland, who was unarmed, of small stature, and had already been searched. Doc. 1 ¶¶ 3, 39–40, 53, 57, 60. In addition, Defendant Parr, alongside Defendants Otero and Gracia, repeatedly "hit, kicked, and punched" Mr. Holland. *Id.* ¶ 57. Because Defendant Parr's conduct violated the Fourth Amendment, opening him up to

potential discipline and personal liability, he had "an independent stake in achieving the object of the conspiracy" to fabricate evidence against Mr. Holland. *Vela*, 2024 WL 990058 at *7. (quoting *H & B Equip. Co. v. Int'l Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978)).

Defendant Parr's malicious prosecution and false arrest arguments are misplaced and should be disregarded, if not stricken. *See* Fed. R. Civ. Pro. 12(f); Doc. 8 at 14–18. As relevant here, Mr. Holland's claims are for fabrication of evidence, failure to intervene, and conspiracy, not malicious prosecution or false arrest. *Vela*, 2024 WL 990058, at *5 ("The Court need not wade into the issue of malicious prosecution, as Vela brings a falsification-of-evidence claim, not a malicious prosecution claim."). These claims "are not identical, with each involving distinct elements." *See id.* at *5; *Morales*, 625 F. Supp. at 610 (W.D. Tex. 2022) (detailing the unique features of malicious prosecution versus fabrication of evidence).

Critically, while the presence of probable cause to make an arrest may defeat a malicious prosecution or false arrest claim, it cannot, on its own, defeat a claim for fabrication of evidence. *E.g.*, *Cole I*, 802 F.3d at 773 ("To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false [evidence] at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." (citation omitted)). Thus, even if the counterfactual narrative Defendant Parr offers were taken as true—and at the motion to dismiss stage, it cannot be—it would not displace Mr. Holland's Fourteenth Amendment claims.

## V. The Court Should Decline To Take Judicial Notice Of Defendant Parr's Voluminous Exhibits Or, Alternatively, Should Take Judicial Notice Of All *Relevant* Judicial Findings In The Proceedings He Points To (Including Those Findings Defendant Parr Has Left Out) And Decline To Consider The Rest.

Defendant Parr asks the Court to take judicial notice of voluminous exhibits on consideration of his motion to dismiss. Docs. 8 at 3–4 (asking the Court to take judicial notice of records attached as Docs. 1–24). Undersigned Counsel has not authenticated them, but they appear

to be: (1) cherry-picked documents from an unrelated 2021 misdemeanor charge to which Mr. Holland plead guilty, (2) selected documents from an unsuccessful *pro se* lawsuit that Mr. Holland filed in 2022, including a bare bones handwritten complaint, and (3) documents from the prosecution of the criminal charge that, Mr. Holland alleges, Defendants secured through fabricated evidence designed to cover up their excessive force. Although these documents are all theoretically subject to judicial notice, *see* Fed. R. Evid. 201(c)(2), the Court should deny Defendant Parr's request because the records he has selected are, in some instances, irrelevant to the motion to dismiss proceedings, and, in other instances, misleading due to cherry-picking from a more nuanced record. *See In re KeyEnergy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 872 (S.D. Tex. 2016); *see also In re Royal Alice Properties, LLC*, 619 B.R. 839, 852 (Bankr. E.D. La. 2020) (citing 21B Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 5104 (2d ed.)) ("this Court will not take judicial notice of or consider documents that are irrelevant to a motion to dismiss.").

Defendant Parr asserts that Mr. Holland's 2021 guilty plea negates his entitlement to statutory tolling in the instant suit, insofar as it contravenes Mr. Holland's assertion that he was under the legal disability of unsound mind. But Defendant Parr conveniently omits that in the same 2021 proceeding, the court identified Mr. Holland as having a "suspected mental illness or intellectual disability" under Tex. Code Crim. Proc. art. 16.22, based on evidence that he was found mentally ill or intellectually disabled by a designated agency within the preceding year. And, in any event, a guilty plea entered in 2021 cannot negate that Mr. Holland was of unsound mind in 2019, the time of Defendants' unlawful conduct. *See* Tex. Civ. Prac. & Rem. Code § 16.001 (providing for tolling of the statute of limitations when a plaintiff is under a legal disability at the time his cause of action accrues). Thus, Defendant Parr's cherry-picked exhibits from an unrelated

criminal case pose more questions than they can credibly answer. *See* Exhibit 1, Early Identification of Suspected Mental Illness or Intellectual Disability, Case No. 234746001010. Because these fact-intensive questions are inappropriate for resolution on a Rule 12(b)(6) motion to dismiss—where the only question is whether Mr. Holland has stated a claim for which relief can be granted—the Court should disregard Defendant Parr's Exhibits 22 through 24.

Similarly, Defendant Parr attaches documents from a *pro se* lawsuit that Mr. Holland filed in 2022, which, Defendant Parr asserts, negate Mr. Holland's entitlement to statutory tolling because it concerned the same incident at issue here. However, as further discussed *supra*, Section I, the fact that a plaintiff previously filed a lawsuit does not, as a matter of law, negate his allegations that he was of unsound mind during the relevant period. *Palla*, 877 S.W.2d at 477 (Tex. App. 1994) ("[E]ven filing suit against the same defendant two different times did not affect the tolling of the statute of limitations." (emphasis omitted)). Thus, like the other documents Defendant Parr presents in support of his counterfactual arguments, the Court should disregard Defendant Parr's Exhibits 1 through 15.

Finally, Defendant Parr attaches selected documents from the prosecution of the criminal charge that, Mr. Holland pleads, Defendants secured through fabricated evidence to cover up their excessive force. He cites these documents extensively in support of misplaced arguments addressed to false arrest and malicious prosecution—claims Mr. Holland did not bring. But these documents are irrelevant to the question of whether Mr. Holland has stated a claim for fabrication of evidence—which is distinct from malicious prosecution and false arrest—and does not require that a plaintiff prove there was no probable cause to arrest or charge him. *E.g.*, *Vela*, 2024 WL 990058, at *4 (collecting cases). Thus, Defendant Parr's Exhibits 16 through 21—even if

prematurely accepted for their truth at this motion to dismiss stage—are immaterial to Mr. Holland's claims.

## CONCLUSION

For the foregoing reasons, Plaintiff Terrence Lamont Holland respectfully requests that the Court deny Defendant Parr's motion to dismiss in its entirety.

Respectfully submitted this 9th day of May, 2025,

**/s/ Shirley LaVarco**
Shirley LaVarco (S.D. Tex. Bar No. 3837906)
shirley@civilrightscorps.org
Brittany Francis*
brittany@civilrightscorps.org
Leonard J. Laurenceau (*pro hac vice* forthcoming)†
leo@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Telephone: (202) 844-4975
Facsimile: (202) 410-8938
* Attorney-in-Charge. Admitted to practice in Texas (Bar No. 24141616), New York (Bar No. 5337555), and the District of Columbia (Bar No. 90008960).
† Admitted to practice in Florida (Bar No. 106987), New York (Bar No. 5772231) and the District of Columbia (Bar No. 90007729).

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on May 9, 2025, a true and correct copy of this document was properly served on counsel of record via electronic filing in accordance with the United States District Court for the Southern District of Texas Procedures for Electronic Filing.

/s/ Shirley LaVarco
*Counsel for Plaintiff*