United States District Court
Southern District of Texas
**ENTERED**
March 11, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TERRENCE LAMONT HOLLAND, | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-00373 |
| | § | |
| ANTONIO JOSE OTERO, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |

## <u>ORDER</u>

Pending before this Court are Defendant Aaron Parr's ("Officer Parr") Rule 12(b)(6) Motion to Dismiss (Doc. No. 8), Defendant Julian Montemayor's ("Officer Montemayor") Rule 12(b)(6) Motion to Dismiss (Doc. No. 9), Defendants Officer Parr and Officer Montemayor's Motion to Strike Plaintiff's Purported Surreply to Motions to Dismiss (Doc. No. 19), Defendants Officer Parr and Officer Montemayor's Motion to Strike Surreply to Motion (Doc. No. 22), Defendant Roberto Hernandez's ("Officer Hernandez") Rule 12(b)(6) Motion to Dismiss (Doc. No. 26), Defendant John Fisher's ("Sergeant Fisher") Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (Doc. No. 27), and Defendants Lucia Gracia ("Officer Gracia") and Antonio Otero's ("Officer Otero") Rule 12(b)(6) Motion to Dismiss (Doc. No. 33). The Court is also in receipt of all responses, replies, and surreplies, notwithstanding the pending objections. (Doc. Nos. 13, 14, 16–18, 21, 25, 35, 38). Upon close review and consideration of the filings and legal standards, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the pending Motions to Dismiss (Doc. Nos. 8, 9, 26, 27, 33) and dismisses Counts II and III of the Complaint.

## I.    Factual Background

This lawsuit was filed by Plaintiff Terrence Lamont Holland ("Plaintiff") based on his alleged injuries from a traffic stop and an encounter with six Houston Police Department officers: Antonio Jose Otero, Aaron Parr, Lucia Gracia, John Fisher, Roberto Hernandez, and Julian Montemayor (collectively, "Defendants"). On December 19, 2021, Plaintiff alleges that Officer Otero stopped him for a suspected traffic violation about one block from his home. (Doc. No. 1 at 5). At the time, Plaintiff allegedly had his young, disabled nephew in the car with him. (*Id.*). Plaintiff immediately called his girlfriend, Lisa Reyes, and asked her to come to the location of the traffic stop. (*Id.* at 6). Reyes arrived at the scene and began filming the interaction with her cell phone.[1] (*Id.*). Shortly thereafter, Plaintiff alleges that Officer Otero instructed him to get out of his vehicle, and he complied. (*Id.*). Officer Otero then allegedly indicated that there was an issue with the license and registration and that Plaintiff was under arrest. (*Id.*).

Plaintiff alleges that when Officer Otero asked whether he had any weapons, he responded "no, I don't have any weapons on me" and complied with a pat down search. (*Id.*). Plaintiff alleges that he asked Officer Otero if he could speak with a "police supervisor" in the hopes that he could clear up any issues with his license and registration and allow his nephew to return home as soon as possible. (*Id.*). After this request, Officer Otero allegedly "placed his hands on [Plaintiff's] forearms and started shoving [him] towards his parked car." (*Id.* at 7). Plaintiff admits that he "pulled away" from Officer Otero and "stepped backwards with his hands in the air." (*Id.*). At some point, Officer Otero requested backup from the Houston Police Department, and other officers arrived at the scene several minutes later. (*Id.*).

---

[1] The Court has reviewed the various videos of the incident provided by the Parties. (Doc. Nos. 45–48). In one of the videos, a woman who the Court presumes to be Ms. Reyes identified herself as the Plaintiff's wife or fiancé.

When Officers Gracia and Parr arrived at the scene, Plaintiff allegedly reasserted his request to speak with a supervisor. (*Id.*). Plaintiff alleges that Officers Gracia and Parr responded to this request by "grabb[ing] him, kick[ing] him, and pull[ing] him to the ground." (*Id.*). Plaintiff alleges that once he was on the ground, Officer Parr yelled "taser, taser" and "deployed his taser on [Plaintiff] in the drive-stun mode." (*Id.*). After Plaintiff was tased, Officer Otero allegedly rejoined the altercation and struck Plaintiff in the head with his knee and elbow. (*Id.* at 8). Plaintiff alleges that he was crying out in pain and physically unable to move. (*Id.*). After additional kicks and hits, Officer Parr deployed his taser on Plaintiff again, and Officers Otero, Parr, and Gracia dragged Plaintiff to a nearby yard and "drive-stunned him another time." (*Id.* at 8).

During this altercation and alleged repeat taser deployments, Plaintiff alleges that Officer Montemayor and Officer Hernandez arrived at the scene. (*Id.* at 9). Plaintiff alleges that Officers Montemayor and Hernandez "could see that Defendants Parr, Gracia, and Otero were tasing and hitting [Plaintiff] repeatedly and unnecessarily, yet took no steps to stop them." (*Id.*). At the conclusion of this alleged incident, the Officers arrested Plaintiff and directly transported him to the hospital to be treated for his injuries. (*Id.* at 11).

Plaintiff further alleged that the five Officers "conspired to fabricate evidence to cover up their illegal attack." (*Id.*). In support of these allegations, Plaintiff states that "Otero falsely claimed in his written reports that [Plaintiff] assaulted him" in order to "cover up his own excessive use of force and that of his fellow officers." (*Id.*). Plaintiff also alleges that "[o]n information and belief," Officers Parr, Gracia, Hernandez, and Montemayor "conspired in this cover up by falsifying their own written reports." (*Id.*). Additionally, Plaintiff alleges that when Sergeant Fisher "arrived on the scene, he reportedly interviewed the Defendant Officers and reviewed their bodyworn camera footage." (*Id.*). Therefore, Plaintiff alleges, Sergeant Fisher was on notice of the excessive use of

3

force but still signed off on the "falsified reports" and "regurgitat[ed] their misrepresentations in his own report." (*Id.*). Plaintiff was ultimately charged with the felony of assaulting a peace officer. (Doc. No. 8-17). Ultimately, the charge was dismissed. (*Id.*).

Plaintiff claims that this incident and the subsequent prosecution caused him severe physical, mental, and emotional damage—in addition to his preexisting disabilities. (Doc. No. 1 at 12). At the time of this incident, Plaintiff alleges that he was already "suffer[ing] from multiple physical, cognitive, and psychological disabilities, including PTSD, hearing impairments, a traumatic brain injury." (*Id.* at 5). Plaintiff alleges that his disability at the time of the incident required "the assistance of a home health aide to manage everyday tasks, such as getting in and out of the shower, going grocery shopping, and completing paperwork." (*Id.* at 6). He alleges that his disability was such that he could not stand for long period of time and had limited physical mobility, including "trouble swallowing food." (*Id.* at 6). Plaintiff alleges that these conditions of his disabilities were severely worsened by the altercation with the Defendants, including that he now "is cautious about spending time outside the safety of his home for fear that the police will violently attack him" and that he is "hypervigilant when completing normal daily tasks such as grocery shopping." (*Id.* at 12). Additionally, Plaintiff alleges that he suffered monetary damages for medical and legal expenses, including his legal defense to the alleged falsified charge. (*Id.* at 12).

On January 29, 2025, Plaintiff filed his Original Complaint in this Court. (Doc. No. 1). Plaintiff alleges that (1) Officers Otero, Parr, and Gracia violated his Fourth Amendment right to be free from the use of excessive force, (2) Officers Otero, Parr, Gracia, Hernandez, and Montemayor violated his Fourth Amendment right to be free from the use of excessive force when they failed to intervene, and (3) all Defendants conspired to fabricate evidence and failed to

intervene to prevent the fabrication of evidence in violation of the Fourteenth Amendment. (*Id.*). Each Defendant has filed a motion with this Court to dismiss any and all claims against them. The Court addresses the claims against each Defendant below.

## II.    Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Factual allegations must be enough to raise a right to relief about the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.     Analysis

The Defendants have each filed a motion to dismiss all claims against them. While the arguments in the pending motions to dismiss largely overlap with one another, the Defendants present tailored arguments pertaining to specific facts alleged in the Complaint. One of the main issues presented by the Defendants is the argument that the claims are barred by the statute of limitations. The Court addresses this universal issue first. On the record before it, this Court cannot hold that the claims are barred by the statute of limitations. Therefore, the Court will next address each cause of action and assess the specific facts alleged against the Defendants.

#### A. Statute of Limitations

As noted, Defendants collectively contend that all claims are barred by the applicable statute of limitations. In the Complaint, Plaintiff admits that the "applicable limitations period on [his] Section 1983 claims is two years, and the events giving rise to his cause of action occurred on December 19, 2019." (Doc. No. 1 at 4 n.3); *see also* Tex. Civ. Prac. & Rem. Code 16.003(a) (establishing that the tort claims in Texas face a two-year limitations bar). Nevertheless, Plaintiff argues that he "is entitled to equitable tolling under Section 16.001 of the Texas Civil Practice and Remedies Code because he was under a legal disability at the time of the Defendants' unconstitutional assault, and has remained as such since then." (*Id.*). Defendants argue that Plaintiff is not entitled to the statutory tolling as a matter of law. The Court finds that after accepting all well-pleaded facts in the Complaint as true and drawing all inferences in Plaintiff's favor, Plaintiff has sufficiently pleaded statutory tolling under the legal doctrine of unsound mind. *Doe v. St. Stephen's Episcopal Sch.*, No. C-08-299, 2008 WL 4861566, at *5 (S.D. Tex. Nov. 4, 2008) (outlining the motion to dismiss standard as applied to this tolling provision).

Section 16.001(b) of the Texas Civil Practice and Remedies Code states that "if a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period." Nevertheless, "a person may not tack one legal disability to another to extend a limitations period" and any "disability that arises after a limitations period starts does not suspend the running of the period." Tex. Civ. Prac. & Rem. Code §§ 16.001(c)–(d). A person of "unsound mind" is under a legal disability. *Id.* at § 16.001(a)(2); *Rollins v. S. Baptist Convention*, 628 S.W.3d 583, 590 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). This exception exists in order "to protect persons without access to the courts" and "persons unable to participate in, control, or understand the progression and disposition of their lawsuit." *Doe*, 2008 WL 4861566, at *5. "In general, unsound mind means insane or mentally incompetent," but any "tolling of limitations . . . is not restricted to those who have been adjudged insane or mentally incompetent." *Rollins*, 628 S.W.3d at 590. Texas courts have recognized that "[a] plaintiff lacks the mental capacity to pursue his suit if he is unable to participate in, control, or understand the progression and disposition of the suit" or when he "is unable to manage his affairs to understand his legal rights." *Id.* (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755 (Tex. 1993)); *Eber v. Harris Cnty. Hosp. Dist.*, 130 F. Supp. 2d 847, 871 (S.D. Tex. 2001). Courts should consider, "for example, the degree to which he was capable of giving information and testifying." *Id.* (citing *Ruiz*, 868 S.W.2d at 755).

Defendants argue that Plaintiff "fails to allege sufficient facts or adduce any evidence that he suffered from a disability and lacked the mental capacity to pursue his suit within the limitations period." (Doc. No. 8 at 6). Nevertheless, at the motion to dismiss stage, the law does not require Plaintiff to produce any affirmative evidence to prove that he was of an "unsound mind" at the time of the incident. *Doe*, 2008 WL 4861566, at *5. The Complaint alleges that at the time of the

incident, Plaintiff "suffered from multiple disabilities, including chronic Post-Traumatic Stress Disorder ('PTSD')" and that "this disability prevented him from vindicating his rights within the two-year period following Defendants' assault." (Doc. No. 1 at 4 n.3). The Complaint also alleges that Plaintiff "suffers from multiple physical, cognitive, and psychological disabilities, including PTSD, hearing impairments, and [a] traumatic brain injury." (*Id.* at 5). Due to these alleged disabilities, Plaintiff claims that he "relies on the assistance of a home health aide to manage everyday tasks, such as getting in and out of the shower, going grocery shopping, and completing paperwork." (*Id.* at 5–6).

Defendants present an argument that Plaintiff has failed to sufficiently allege that the tolling doctrine applies to this case. First, Defendants argue that the pleaded disabilities are "vague," and that the factual allegations admit that "Plaintiff was able to drive and entrusted with taking his disabled and legally blind, apparently young, nephew to the store" and "had the mental foresight to call his girlfriend 'to come outside to witness the encounter' and demand to speak with a supervisor to explain any issue with his license of vehicle registration." (Doc. No. 8 at 7). While Defendants attempt to utilize other factual allegations in the Complaint to demonstrate that Plaintiff was not sufficiently disabled to meet the "unsound mind" standard for the tolling doctrine, the success of the argument would depend on this Court making a factual determination regarding the scope of Plaintiff's disability. While such an argument (with the support of admissible evidence collected through the discovery process) may be appropriate at the summary judgment stage, the Court is not in a position to render some factual allegations "more true" or "more significant" than others. The legal standard requires precisely the opposite: to accept all well-pleaded facts as true and draw all inferences in Plaintiff's favor. Nevertheless, Texas courts have recognized that PTSD and other similar disabilities may invoke the tolling doctrine. *See, e.g.*, *Rollins*, 628 S.W.3d at 589.

Defendants also argue that because Plaintiff filed a prior lawsuit against the Houston Police Department in July 2022, *pro se*, pertaining to the alleged assault at the center of this lawsuit, Plaintiff clearly had awareness of the nature of the legal proceedings and the opportunity to participate in the judicial process. (Doc. No. 8 at 7). In response, Plaintiff argues that the very existence of the other lawsuit is evidence of his "unsound mind," as the lawsuit was handwritten, and he was unable to accept the advice of the state court to obtain counsel. (Doc. No. 13). Even assuming that this evidence may later be considered by this Court, the evidence is not dispositive. Texas courts have recognized that "prior lawsuits filed by or on behalf of a person who invokes unsound-mind tolling in a later suit do not, standing alone, disentitle him to the tolling of limitations in the later suit." *Rollins*, 628 S.W.3d at 603. Nevertheless, at this stage of the litigation, this Court cannot make a factual determination regarding his mental state or the facts surrounding the state court lawsuit.

Lastly, Defendants argue that because Plaintiff "entered a voluntary plea and waiver of jury trial in state criminal proceedings" for a DWI charge in 2021, he is not entitled to the tolling doctrine. *See* (Doc. No. 8-24). Texas courts have also recognized that such waivers are not dispositive because such competency is "presumed." *Rollins*, 628 S.W.3d at 601 ("Without further evidence of the underlying proceedings, a summary of [] prior convictions and criminal history does not conclusively prove that [the plaintiff] could participate in, control, or understand the progression and disposition of a civil lawsuit . . . ."). Any entry of a guilty plea, as a matter of law, does not preclude a plaintiff from invoking the "unsound mind" doctrine.

While Defendants identified factual allegations and presented outside sources to argue that the tolling provision should not apply to this case, this Court must focus on the current task at hand: to determine whether the face of the Complaint contains sufficient factual allegations to state

a claim for tolling the statute of limitations. The Court finds that the Complaint sufficiently contains each of the relevant elements of the tolling provision and hereby denies the Defendants' request to dismiss the case on the basis of statute of limitations without prejudice.[2]

### B. Count 1: Excessive Force

The Court turns next to the causes of action alleged in the Complaint. First, Plaintiff alleges that Officers Otero, Parr, and Gracia subjected him to excessive force in violation of the Fourth Amendment. Section 1983 provides a private cause of action against any person who "under the color of" state law, deprives another of his federal rights. 42 U.S.C. § 1983. Individuals have a Fourth Amendment right to be free from excessive force in the course of an investigatory stop or arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Officer Parr filed a Motion to Dismiss, and Officers Otero and Gracia filed a Joint Motion to Dismiss this excessive force claim. (Doc. Nos. 8, 33). The Officers argue that Plaintiff has failed to state a plausible Fourth Amendment claim, and in the alternative, the Officers should be entitled to qualified immunity. The Court finds that the Plaintiff alleged sufficient facts to support an excessive force claim against the Officers and to overcome the defense of qualified immunity. The Motions to Dismiss (Doc. Nos. 8, 33) on the basis of the excessive force claim are **DENIED**.

The Court first addresses whether Plaintiff sufficiently stated an excessive force claim. To sufficiently plead an excessive force claim under the Fourth Amendment, a plaintiff must demonstrate: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Santander v. Salazar*,

---

[2] The Court notes that the Defendants may reraise this argument, if they so choose, at the summary judgment stage, remembering, of course, that Texas courts have established that "once a plaintiff pleads an exception to the statute of limitations, the defendant bears the burden to disprove its applicability and cannot obtain summary judgment unless he carries this burden." *Rollins*, 628 S.W.3d at 593.

133 F.4th 471, 479 (5th Cir. 2025) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). While excessive force claims need not allege "significant injury," "the injury must be more than *de minimis*." *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (quoting *Graham*, 490 U.S. at 396)). "Factors to consider include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396)).

In this case, Plaintiff has sufficiently stated facts to support an excessive force claim against Officers Otero, Parr, and Gracia. Recognizing that Plaintiff "must specifically identify each defendant's personal involvement in the alleged wrongdoing," *Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024), the Court finds that the Complaint provides specific factual allegations that, if true, would support an excessive force claim against the three officers. First, Plaintiff alleges that the conduct of the Defendants caused significant physical and psychological injury, including a "split lip, bleeding ear, severe bruising and a wounded rib cage," as well as certain "psychological trauma" such as hypervigilance and "post-traumatic stress symptoms." (Doc. No. 1 at 12). Second, Plaintiff sufficiently alleges that the "overwhelming force" used by Officers Otero, Parr, and Gracia caused these injuries. (*Id.*).

Lastly, to support that the use of force was "clearly excessive" and "clearly unreasonable," Plaintiff provides specific factual allegations pertaining to each of the three officers. Plaintiff alleges that after Plaintiff asked to speak with a supervisor, Officer Otero "placed his hand on [his] forearms and started shoving [him] towards his parked car." (*Id.* at 7). Plaintiff also alleges that

Officer Otero "joined in the pile-on" with Officers Parr and Gracia by "grabbing [him] and striking him in the head with his knee." (*Id.* at 8). As to Officers Gracia and Parr, Plaintiff alleges that when these two officers arrived as back-up, they "grabbed him, kicked him, and pulled him to the ground." (*Id.* at 7). Plaintiff also alleges that Officer Parr repeatedly deployed his taser while Plaintiff was on the ground. (*Id.*). Plaintiff alleges that Officers Otero, Gracia, and Parr all "repeatedly hit, kicked and punched [him], using their hands, fists, elbows, and knees to strike him" and "[t]hey did so despite [his] lack of resistance to their assault, and despite the fact he was crying out in pain." Accepting the well-pleaded factual allegations as true, the Court finds that Plaintiff has sufficiently stated a Fourth Amendment excessive force claim against Officers Otero, Gracia, and Parr.[3]

## 1. Qualified Immunity

Officers Otero, Gracia, and Parr argue that they are entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To rebut the defense of qualified immunity, a plaintiff must plead sufficient facts to allege: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011). When evaluating the applicability of the qualified immunity defense at the motion to dismiss stage, a district court must

---

[3] The Court notes that an exception to reliance on the wording of the Complaint is found in cases where the incident in question was captured on video. *Crane v. City of Arlington, Texas*, 50 F.4th 453, 461–462 (5th Cir. 2022) ("When there is video evidence in the record, courts are not bound to accept the nonmovant's version of the facts if it is contradicted by the video."). The Parties refer to videos in their briefing, and consequently, the Court ordered all videos to be produced. The Court has reviewed all videos and does not find that they are conclusive on this issue at this stage.

first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 306 (5th Cir. 2020).

Having established that Plaintiff has sufficiently alleged an excessive force claim, the Court next turns to whether the right that Plaintiff asserts was "clearly established." *Santander*, 133 F.4th at 480. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). While a plaintiff is not required to address a case that is "directly on point," some "existing precedent" must "place[] the statutory or constitutional question beyond debate." *Dyers*, 964 F.3d at 383 (quoting *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011) (en banc)). Nevertheless, "[t]he clearly established inquiry is [especially] demanding" for excessive force claims. *Santander*, 133 F.4th at 480 (quoting *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1167 (5th Cir. 2021)). "Because excessive force 'is an area of the law "in which the result depends very much on the facts of each case," . . . police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104–05 (2018) (per curiam)).

Plaintiff identifies Fifth Circuit precedent to allege that his Fourth Amendment right to be free from excessive force was "clearly established" at the time of the encounter. The Fifth Circuit has recognized that "it is clearly established that 'officers engage in excessive force when they physically strike a subject who is not resisting arrest.'" *Id.* (quoting *Spiller v. Harris Cnty.*, 113 F.4th 573, 578 (5th Cir. 2024). This is a long-established rule in the Fifth Circuit. *See, e.g.*, *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015); *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013); *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012). In *Cobbins v. Sollie*, the Fifth Circuit even recognized that "an individual stopped for a minor traffic offense offers, at most, passive

13

resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating (which may include threats of force) is clearly unreasonably and excessive." 2023 WL 4015303, at *5 (5th Cir. Jun. 14, 2023) (quoting *Hanks*, 853 F.3d at 741)). While the Defendants argue that this clearly established precedent should not apply to this case because Plaintiff admits that he "pulled away" and "stepped backwards" from Officer Otero, (Doc. No. 1 at 7), the Fifth Circuit has held that merely pulling an arm away from an officer, without more, "is insufficient to find an immediate threat to the safety of the officers" or amounts to resisting arrest. *Ramirez*, 716 F.3d at 378 (holding that defendant officers violated the Fourth Amendment when they "forced [plaintiff] to the ground without resistance"). The video evidence clearly depicts the Plaintiff not only pulling away from Officer Otero, but also being argumentative and belligerent. Further, he consistently refused to follow Officer Otero's instructions. That being said, none of the videos actually provide a good depiction of what happened during the tasing episode.

Plaintiff also identifies Fifth Circuit precedent to support that the alleged repeated tasing was a violation of his clearly established right to be free from excessive force. In *Cobbins*, the Fifth Circuit summarized long-established precedent to hold that "tasing a subject who is suspected of no more than a misdemeanor, is pinned to the ground, is surrounded by law enforcement officers and unable to escape, is unarmed, and is offering no more than passive resistance, amounts to excessive force in violation of the Fourth Amendment." 2023 WL 4015303, at *6 (relying on *Darden v. City of Fort Worth*, 880 F.3d 722, 725 (5th Cir. 2018); *Ramirez v. Guadarrama*, 3 F.4th 129, 379 (5th Cir. 2021); *Anderson v. McCaleb*, 480 Fed. App'x 768, 773 (5th Cir. 2012); *Massey v. Wharton*, 477 Fed. App'x 256, 263 (5th Cir. 2012); *Autin v. City of Baytown*, 174 Fed. App'x 183, 186 (5th Cir. 2005)).

14

Without again reciting the details of this encounter, the Court finds that this long-established line of case law is sufficient to establish that the right to be free from the use of excessive force at a traffic stop without forcefully resisting arrest was clearly established at the time of the subject incident. The Court finds that Plaintiff has alleged sufficient facts to overcome the defense of qualified immunity at this stage of the litigation. The Court **DENIES** the Motions to Dismiss (Doc. No. 8, 33) on the basis of qualified immunity without prejudice to reraising the defense under Federal Rule of Civil Procedure 56 once the facts have been developed. The Court will permit the parties to conduct limited discovery on the issue of whether Officers Parr, Gracia, or Otero violated the Fourth Amendment.

### C. Count 2: Failure to Intervene

In his second cause of action, Plaintiff alleges that Officers Otero, Parr, Gracia, Hernandez, and Montemayor violated the Fourth Amendment when they "failed to intervene in each other's excessive use of force despite being physically present, being aware of the constitutional violations at hand, and having ample opportunity to intervene." (Doc. No. 1 at 14). These Officers argue that Plaintiff has failed to state a Fourth Amendment claim against them, and in the alternative, that they are entitled to qualified immunity. (Doc. Nos. 8, 9, 26, 33).

To rebut the defense of qualified immunity, a plaintiff must plead sufficient facts to allege: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 732. When assessing whether defendants are entitled to qualified immunity, the Supreme Court does not require district courts to address both prongs for every case. *See Pearson*, 555 U.S. at 236. Rather, courts may find qualified immunity based solely on a plaintiff's failure to clear the clearly established hurdle. *Bartlett*, 981 F.3d at 331 ("We have discretion to leapfrog the merits and go straight to whether the

alleged violation offended clearly established law."). This is because addressing the first prong of whether a constitutional violation took place, "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.*

In accordance with that decision, this Court will examine Plaintiff's pleadings as they pertain to the clearly established requirement as an initial matter. As the Court stated above, the Fifth Circuit "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution." *Id.* at 330. In fact, the Circuit stated, "we cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the [Constitutional right], and without explaining why the case clearly proscribed the conduct of that individual officer." *Id.* at 345.[4]

The five officers argue that they are entitled to qualified immunity on this bystander liability claim because Plaintiff fails to meet his burden to show that the right was "clearly established" at the time of the incident. While Plaintiff identifies the same cases discussed in the above section that support that the Fourth Amendment right to be protected from excessive force was clearly established, Plaintiff does not provide any cases that show that the failure to intervene in another officer's use of excessive force was clearly established. The Fifth Circuit has held that a plaintiff has the burden to identify case law "to support the argument that any reasonable officer would have known to intervene under these circumstances." *Id.* "The Supreme Court strictly enforces the requirement to identify an analogous case and explain the analogy," and Plaintiff has failed to provide such analysis here. Therefore, the Court hereby **GRANTS** the Motions to Dismiss

---

[4] This is especially true here where for Officers Otero, Gracia, and Parr, the Plaintiff is essentially arguing that they should have intervened in their own actions.

(Doc. Nos. 8, 9, 26, 33) and finds that Plaintiff did not allege sufficient facts to overcome the defense of qualified immunity on the Failure to Intervene claim.[5]

### D. Count 3: Conspiracy to Fabricate Evidence and Failure to Intervene to Prevent the Fabrication of Evidence

Lastly, Plaintiff alleges that each of the Defendants "conspired to fabricate evidence against Mr. Holland for the purpose of concealing and justifying Defendants' excessive force violations," including "falsified incident reports and supplements, and false verbal statements, including to the Harris County District Attorney's Office." (Doc. No. 1 at 14). "Fabrication of evidence, even if it does not ultimately result in conviction, is a violation of the Fourteenth Amendment." *Vela v. Lewis*, No. 4:23-CV-3376, 2025 WL 1569449, at *7 (S.D. Tex. Jun. 3, 2025) (citing *Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015), *judgment vacated sub nom.*, *Hunter v. Cole*, 580 U.S. 994 (2016), *opinion reinstated in relevant part*, 905 F.3d 334 (5th Cir. 2018)).

Plaintiff alleges that all six of the Defendants engaged in a civil conspiracy to fabricate evidence against him "for the purpose of concealing and justifying Defendants' excessive force violations." (Doc. No. 1 at 14). "To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 315 (5th Cir. 2019) (per curiam). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Id.* (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th

---

[5] Moreover, the videos clearly demonstrate that the only two true "bystanders," as that term is popularly used, were Officers Hernandez and Montemayor. The videos reveal that they were actually securing the scene at the time of the incident and were not actually in a position to intervene in the alleged tasing incident. This might be why Plaintiff has not alleged a more factually-based and non-conclusory scenario.

Cir. 1982)). "Although we accept well-pleaded facts as true and view them in the light most favorable to the plaintiff, a complaint 'that offers labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement' is not plausible for purposed of Rule 12(b)(6)." *Id.* Therefore, a plaintiff bringing a § 1983 civil conspiracy claim "must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal rights." *Id.*

Plaintiff alleges that after the encounter, "Defendants arrested him and conspired to fabricate evidence to cover up their illegal attack." (Doc. No. 1 at 11). Plaintiff alleges that Officer Otero "falsely claimed in his written reports that [Plaintiff] assaulted him." (*Id.*). Plaintiff alleges that while Officer Otero "complained of a 'minor' scrape to his elbow and a 'possible' strained pectoral muscle," Officer Otero "admitted that he scraped his own elbow on [Plaintiff's] teeth" and "did not expressly attribute the muscle strain" to Plaintiff. (*Id.*). Plaintiff alleges that Officer Otero included these allegedly false statements in the police report "to cover up his own excessive use of force and that of his fellow officers." (*Id.*). Plaintiff alleges that Sergeant Fisher "reviewed the bodyworn camera footage" and "was thus on notice of the Defendant Officers' excessive use of force." Therefore, Plaintiff alleges, Sergeant Fisher "conspired in their misconduct by signing off on the Defendant Officers' falsified reports and regurgitating their misrepresentations in his own report." (*Id.*). As for the remaining Defendants, Plaintiff only alleges that "[o]n information and belief, Defendants Parr, Gracia, Hernandez, and Montemayor conspired in this cover up by falsifying their own written reports." (*Id.*).

The Court finds that the Complaint does not allege any specific facts that, if true, could establish a civil conspiracy between the Defendants. Plaintiff only makes one conclusory allegation that there was one false statement made in the police report—specifically, that Officer

Otero falsely stated that Plaintiff assaulted him. While Plaintiff states that Officer Otero commented on the existence of injuries in the report, Plaintiff does not contend that the statements in the report were false, and he even acknowledges that Officer Otero "admitted" that "he scraped his own elbow." (*Id.*).

Not only does Plaintiff not allege sufficient facts to support an underlying constitutional violation, but Plaintiff also does not sufficiently state a claim for civil conspiracy. Plaintiff only states that "[o]n information and belief," the Defendants were involved in a civil conspiracy to fabricate evidence. (*Id.*). Recognizing that "[c]onspiracy claims frequently rely on circumstantial evidence, as conspiracies 'are rarely evidenced by explicit agreements,'" *Vela*, 2025 WL 1569449, at *7, the only specific allegation is that Sergeant Fisher reviewed the bodycam footage, and thus, was on notice of the "falsified" reports. (Doc. No. 1 at 11). The Court finds that after accepting all of the well-pleaded factual allegations in the Complaint as true, Plaintiff has failed to state a claim for civil conspiracy to fabricate evidence.

Plaintiff also alleges that "Defendants are also liable for failing to intervene in each other's fabrication of evidence despite being physically present, being aware of the constitutional violations at hand, and having ample opportunity to intervene." (*Id.* at 15). "Although failure to intervene, also called bystander liability, generally arises in the context of another officer's use of force, it has also been applied when an officer fails to intervene in another's fabrication of evidence." *Vela*, 2025 WL 1569449, at *7. A bystander officer may be liable for failure to intervene where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* (quoting *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).

19

Plaintiff relies on the same statement of facts set forth above to allege that each of the Defendants failed to intervene in the fabrication of evidence. As discussed above, while Plaintiff identifies one allegedly false statement in Officer Otero's police report, Plaintiff does not provide any specific factual allegations that the other Defendants reviewed the police report, knew that the statement in the police report was false, or even had the opportunity to intervene in the alleged fabrication of evidence. While the Complaint includes the conclusory language that each of the Defendants were "aware of the constitutional violations at hand" and had "ample opportunity to intervene," (Doc. No. 1 at 14), the Court finds, after accepting all well-pleaded factual allegations in the Complaint as true, that the allegations are far too conclusory to state a bystander claim. Moreover, this Court finds that given the lack of true factual allegations under the current pleadings, the Defendants would have qualified immunity on this claim. The Court hereby **GRANTS** Defendants' Motions to Dismiss (Doc. Nos. 8, 9, 26, 27, 33) to the extent the Motions request the Court to dismiss Count III of the Complaint.[6]

## IV.    Conclusion

For the foregoing reasons, the Court hereby grants-in-part and denies-in-part the Defendants' Motions to Dismiss (Doc. Nos. 8, 9, 26, 27, 33). The Court dismisses Counts II and III of the Complaint. Accordingly, the Court dismisses any and all claims against Officer Julian Montemayor, Officer Roberto Hernandez, and Officer John Fisher with prejudice. The Court notes that the sole remaining claim in this case is the excessive force claim (Count I) against Officer Antonio Otero, Officer Aaron Parr, and Officer Lucia Gracia. The Court also grants-in-part

---

[6] The Court notes that Defendants raised other grounds for dismissal of this cause of action, including the intra-corporate conspiracy doctrine and, as it pertains to Sergeant Fisher, the lack of standing to pursue the § 1983 action against the supervisory official. *See* (Doc. No. 27). Finding that Plaintiff failed to state a claim for this cause of action, the Court need not reach the merits of these arguments in this Order.

Defendants' Montemayor and Parr's Motions to Strike Plaintiff's Surreplies (Doc. Nos. 19, 20). The surreplies (Doc. Nos. 18, 21) will not be stricken from the record, but the Court did not consider the surreplies in consideration of this Order.

It is so ordered.

Signed on this the ___10th___ day of March 2026.

Andrew S. Hanen
United States District Judge