IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRENCE LAMONT HOLLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:25-cv-373 |
| ANTONIO JOSE OTERO, AARON PARR, | § | |
| LUCIA GRACIA, JOHN C. FISHER, | § | |
| R. HERNANDEZ, and JULIAN M. | § | |
| MONTEMAYOR, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S RESPONSE TO THE COURT'S SHOW CAUSE ORDER**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant-Officers Antonio Otero, Aaron Parr, and Lucia Gracia (collectively "Defendants") file this Response to the Plaintiff's Response (Dkt. #57) to the Court's Show Cause Order (Dkt. #50), respectfully showing the following:

i

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................ 1

ARGUMENT

    I.     Plaintiff is not entitled to a competency hearing or "next friend' appointment. ................. 2

    II.   A competency hearing exceeds the scope of this Court's supplemental jurisdiction and is barred by the Defendants' qualified immunity. ............................................................... 4

    III.    A competency proceeding or determination is not reasonably related to Defendants' qualified immunity. ..................................................................................................... 5

    Plaintiff's admitted competency contradicts his unsound mind claim for tolling limitations. ... 6

    IV.   The Court should reconsider and grant Defendants' motions to dismiss on statute of limitations grounds ........................................................................................................ 9

CONCLUSION AND PRAYER ............................................................................................ 12

CERTIFICATE OF SERVICE ............................................................................................. 13

**SUMMARY OF ARGUMENT**

Defendants agree that Mr. Holland is competent for the same reasons that he is not entitled to tolling of limitations due to an unsound mind. Unsound mind and mental competency are one and the same. Admissions that Mr. Holland retained his cognitive function despite functional impairments demonstrate that his unsound mind allegations were frivolous. The Court should reconsider Defendants' motions and grant dismissal with prejudice on statute of limitations grounds. Alternatively, the Court should dismiss the case without prejudice until Mr. Holland regains or adjudicates mental competency.

Alternatively, if Mr. Holland lacked the mental capacity to understand his legal rights and pursue his prior civil lawsuit filed regarding the same subject matter while consulting his current attorneys, then Mr. Holland lacked the capacity to bring this federal case, retain his current attorneys or authorize the attempt to incapacitate him without the procedural safeguards of state guardianship proceedings.

Plaintiff is not entitled to a competency hearing and "next friend" appointment and does not qualify as an incompetent prisoner or death sentenced person challenging his execution. State courts have exclusive jurisdiction over guardianship proceedings. Competency determinations exceed the scope of supplemental jurisdiction in this case and are not reasonably related to the Defendants' qualified immunity for which the Court has permitted narrowly tailored discovery.

Even if the Court decides a competency hearing is appropriate, these Defendants are not the appropriate litigants and should not be made to bear the costs and burdens of litigating a guardianship proceeding in which they lack an interest or stake. Qualified immunity does not allow it. Nor would it be fair to force them and their attorneys into the moral and ethical conflict of having to both advocate for the Defendants and preserve Mr. Holland's individual rights.

1

**I.**      **<u>Plaintiff is not entitled to a competency hearing or "next friend' appointment.</u>**

Plaintiff argues he is mentally competent but alternatively, the Court should hold a competency hearing and appoint a next friend to act on his behalf.   Plaintiff offers no authority for a federal court to exercise supplemental jurisdiction over competency proceedings that do not involve an incompetent prisoner.  He relies on cases concerning the competency of death sentenced individuals to be executed, the historical authority for next friends to bring habeas corpus actions for incompetent prisoners if they satisfy certain grounds, and competency hearings for unrepresented mentally incompetent prisoners.  Dkt. #57, citing *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990), and *Magallon v. Livingston*, 453 F.3d 268, 272-73 (5th Cir. 2006).  Plaintiff does not qualify for appointment of a next friend or a competency hearing under any of these standards. *See Magallon v. Livingston*, 453 F.3d 268, 272-73 (5th Cir. 2006).

Guardianship proceedings "must be heard in a court exercising original probate jurisdiction." TEX. EST. CODE §1002.001.  The Harris County statutory probate court has original and exclusive jurisdiction of guardianship proceedings in Harris County. TEX. ESTATES CODE §1022.005; TEX. PROB. CODE §4A(a) ("All probate proceedings must be filed and heard in a court exercising original probate jurisdiction."); TEX. ESTATES CODE §606(d) ("In those counties in which there is a statutory probate court, all applications, petitions, and motions regarding guardianships . . . shall be filed and heard in the statutory probate court."). *See also Gromer v. Mack*, 799 F. Supp. 2d 704 *; 2011 U.S. Dist. LEXIS 70945 (N. D. Tex. 2011).

Federal courts may not "usurp the role of specialized state probate courts in guardianship proceedings." *Id. See also id.* at fn.5 (citing *Turton v. Turton*, 644 F.2d 344, 347 (5th Cir. 1981) (acknowledging that "[a]s a general matter a diversity court has jurisdiction to entertain any civil action that could be brought in a state court," but mindful of limits imposed by probate exception)); *id.* at 347 (recognizing "the specialized functions and jurisdiction of these courts as an indication

of the unbalancing of federal and state judicial responsibilities if guardianship proceedings were deemed to be adjudicable in federal court.")).

In Texas, "mentally incapacitating" an adult is a serious legal process—guardianship—that removes an individual's civil liberties, including the rights to manage finances, choose residence, or make medical decisions.  Tex. Est. Code § 1002.017.  Texas guardianship proceedings are primarily governed by the Texas Estates Code, Title 3, which covers the appointment of guardians, the rights of the incapacitated person (ward), and the administration of guardianship estates.  The burden of proof is high, requiring clear and convincing evidence that the adult is substantially unable to provide food, clothing, or shelter, or manage their own financial affairs. A Physician's Certificate of Medical Examination (PCME) from an M.D. or D.O. is required, stating the specific areas of capacity that are lacking.  The proposed ward, relatives, and interested parties, must receive personal service of notice.  A court investigator will be assigned and often, an attorney ad litem appointed to advocate for the rights and interests of the potential ward.  SEE TEX. EST. CODE §§ 1054.151, 1001.001(a).  The Court must consider less severe alternatives s before mentally incapacitating an adult.  § 1101.101(a)(1)(D) & (E) and (c). If deemed incompetent, a guardian must take control of the ward's assets, bank accounts, and control of all their affairs.  The guardian must post a bond and swear an oath.  Very little can be done without Court approval once a person is incapacitated.

It is unclear why guardianship proceedings were not initiated in the many years that Mr. Holland was allegedly of unsound mental capacity, but he should not be allowed to avoid the protections of state guardianship proceedings and the resulting loss of civil liberties in favor of a federal shortcut and "next friend" appointment.

If Mr. Holland lacked the mental capacity to understand his legal rights and pursue his prior

3

civil lawsuit filed regarding the same subject matter while consulting his current attorneys, then Mr. Holland lacked the capacity to bring this federal case, retain his current attorneys or authorize the attempt to incapacitate him without the procedural safeguards of state guardianship proceedings.  In that case, the case should be dismissed without prejudice or alternatively, abated.

II.      **A competency hearing exceeds the scope of this Court's supplemental jurisdiction and is barred by the Defendants' qualified immunity.**

Under § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). In essence, §1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 U.S. Dist. LEXIS 61317, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

This Court may not exercise supplemental jurisdiction over the state law guardianship claim that does not share a common factual basis to the federal civil rights claim. *Paixao v. City of Greenwood*, No. 4:23CV047-GHD-JMV, 2024 U.S. Dist. LEXIS 1144, at *6 (N.D. Miss. 2024) ("the common factual basis for the claims provides the first step to determining the Court's supplemental jurisdiction over the state law claims").

Plaintiff's claim under section 1983 arise exclusively from the December 2019 encounter with Defendant-Officers resulting in his assault of Officer Otero and arrest.  Plaintiff's purported incapacity due to "Lifetime PTSD" (Dkt. #4) that was first formally diagnosed in 2016 but may have predated the diagnosis, does not share a common factual basis for the claim of excessive force

4

during a December 2019 police encounter.  Though Plaintiff's competency might be relevant to the affirmative defense of limitations, asserting the defense does not compel Defendants to prove or disprove Mr. Holland's current or historical mental capacity.   Plaintiff's response recognizes this.  Dkt. #57 at 1-2 citing *Draughon v. Johnson*, 631 S.W.3d 81, 85 (Tex. 2021) (in state court, the summary judgment burden to prove limitations has run remains on the movant and does not shift to the non-movant who has sufficiently demonstrated entitlement to unsound mind tolling).

Therefore, this Court may not properly exercise supplemental jurisdiction over an indirect guardianship proceeding or potential appointment of a next friend.  *See Wise v. Wilmoth*, No. 3:16-CV-1039-M-BH, 2017 U.S. Dist. LEXIS 119725, at *2 (N.D. Tex. 2017) (civil rights claims and certain state law claims brought in federal case while probate and guardianship proceedings were filed in state court).  Indeed, Defendant cannot find a single example of a federal district court within the Fifth Circuit exercising jurisdiction over a state law guardianship proceeding over an adult individual.

III.   **A competency proceeding or determination is not reasonably related to Defendants' qualified immunity.**

Even if the Court decides a competency hearing is appropriate, these Defendants should not be made to bear the costs and burdens of litigating a guardianship proceeding in which they lack an interest or stake.  Qualified immunity does not allow it.  Defendants are not the appropriate adversaries to litigate Mr. Holland's mental capacity, nor would it be fair to force them and their attorneys into the moral and ethical conflict of having to both advocate for the Defendants and preserve Mr. Holland's individual rights.

Qualified immunity not only means immunity from judgment, but it also means immunity from the lawsuit, having to file an answer, participate in discovery or otherwise defend against claims.

> One of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the "broad-ranging discovery" that can be "peculiarly disruptive of effective government." For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation.

*Geter v. Fortenberry,* 849 F.2d 1550, 1553-54 (5th Cir. 1988). "If discovery is necessary before immunity can be resolved, "Of course, any such discovery should be tailored specifically to the question of [defendant's] qualified immunity." *Id.*

Defendants object to any competency proceeding or other probate-type matter as exceeding the scope of narrowly tailored discovery relevant to the claim against them and qualified immunity. Dkt. #49 (Order on motions to dismiss).

### **Plaintiff's admitted competency contradicts his unsound mind claim for tolling limitations.**

Plaintiff misrepresents the law to claim that he can simultaneously be of unsound mind for tolling and mentally competent to bring this action, relying on Texas cases affirming the burden of proving the affirmative defense of statute of limitations remains on the movant, and does not shift to the nonmovant to prove an unsound mind. Dkt. #57 at 1-2  (citing *Draughon v. Johnson*, 631 S.W.3d 81, 85 (Tex. 2021)).

Mental incompetence and "unsound mind" are one and the same in Texas.  Entitlement to "unsound mind" tolling in Texas focuses on the individual's mental capacity, not just a medical diagnosis, and requires proof of an inability to handle one's own affairs.  TEX. CIV. PRAC. & REM. CODE § 16.001.  *See Draughon*, 631 S.W.3d 81 (discussing history of unsound mind tolling and protection of those who lose their chance to pursue legal rights due to mental incompetence; the concern that the mentally incompetent, unlike children, are less likely to have others protect or show sufficient concern for their interests); *see also* Tex. Const. art. I, § 13; *Tinkle v. Henderson*, 730 S.W.2d 163, 166–67 (Tex. App.—Tyler 1987, writ ref'd) (holding limitations statute without

6

tolling provision for mental incompetence unconstitutional); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755 (Tex. 1993).

The Fifth Circuit recently considered unsound mind tolling on 12(b)(6) review, reiterating what must be shown to establish unsound mind tolling:

> Section 16.001(b) of the Texas Civil Practice and Remedies Code states that "[i]f a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period." "[A] person is under a legal disability if the person is . . . of unsound mind." The district court concluded that "[s]imply alleging tolling based on unsound mind is not enough." "**At a minimum, [Kerns] must produce '(1) specific evidence that would enable the court to find that the incompetent person did not have the mental capacity to pursue litigation** or (2) a fact-based expert opinion to that effect.'" Since Kerns did not "meet his initial burden of showing unsound mind, either by alleging specific facts or producing evidence," as required by *Rollins*, the court concluded that his claims would not be tolled.

*Kerns v. Dickson*, No. 25-40349, 2026 U.S. App. LEXIS 4350, at *10-11 (5th Cir. 2026) (unpublished) (footnotes omitted).

Plaintiff's admissions that he did not lose the ability to understand his legal rights and consult with his attorney, and specific reliance on the 2024 expert report to demonstrate he retained sufficient cognitive function despite functional impairments, directly contradict his claim to unsound mind tolling.

Plaintiff's claims accrued on December 19, 2019, and limitations expired on December 19, 2021. He was able to understand his rights and pursue his claims and did so by filing a pro se civil suit against the Houston Police Department and City of Houston on August 15, 2022. Dkts. #33-1, #33-2, #33-3, #33-4, #33-12. *Terrence Holland v. City of Houston*, Cause No 2022-61791 in the 270th District Court of Harris County, Texas. Plaintiff sought a continuance of those proceedings while he consulted the very same attorneys representing him in this federal action. These attorneys provided a letter for Plaintiff to attach to a motion seeking a continuance of the

7

motion to dismiss hearing so they could complete their assessment of his case. Dkt. #33-12 at 1-2. The case was ultimately dismissed as barred by statute of limitations. Dkts. #33-9, #33-10, #33-13, #33-15.   A state court judge made an express finding of competence before accepting Plaintiff's October 2021 guilty plea. Dkt. #8-24 at 3. Plaintiff's criminal defense counsel certified that he explained all matters to Plaintiff who he believed to be competent. *Id.* Plaintiff himself signed that he was entering the plea knowingly and voluntarily. *Id.*

Relying on an expert report, Plaintiff maintained he was and remains mentally incompetent and entitled to unsound mind tolling despite the competency findings, and that he lacked capacity to understand his legal rights and pursue claims when he filed the 2021 pro se civil suit. Dkts. #35, #14, #13 (citing Dkt. #4).

Reversing courses, Plaintiff cites the same expert report as evidence that despite his functional impairments, he maintained mental capacity the entire time and specifically is able to understand his legal rights and pursue claims, specifically:

> At the same time, Mr. Holland retains the ability to communicate and engage in conversation about his interests, along with other primary cognitive functions. He can communicate coherently, respond to questions, and understand that he was unfairly harmed. *See* Doc. 4 at 4, 8. He has, at times, attempted to seek assistance or relief, including filing a *pro se* complaint.1 Doc. 13 at 9–10, 28. Importantly, during Dr. Hughes' examination, Mr. Holland was able to read and respond independently; took his time and was diligent in his response style; and did not need any assistance in completing self-assessments. *See* Doc. 4 at 4. Mr. Holland remained engaged with Dr. Hughes throughout the evaluation, and appeared, "honest and forthright in his responses." *Id.* Based on behavioral observations and prolonged interaction with Mr. Holland, the examiner did not observe any factors that would indicate "poor compliance, altered mental status, inability to understand the content of the structured interview, or 'faking bad' (exaggerating the severity of his symptoms)." *Id*. at 8.

Dkt. #57 at 3 (citing Expert Report, Dkt. #4).

The response does not present new evidence or claim that Mr. Holland regained capacity between now and then.   The Court should accept Mr. Holland's response to the Show Cause Order

confirming that the very expert report he relied on to plead an unsound mind demonstrates that despite his PTSD and functional impairments, he always retained his mental capacity to understand his legal rights and pursue his claims.

Alternatively, if the Court accepts that Mr. Holland was and remains of unsound mind, and specifically the argument that he lacked the mental capacity to understand his legal rights and pursue his prior civil lawsuit filed regarding the same subject matter while consulting his current attorneys, then the Court must accept that Mr. Holland lacked the capacity to bring this federal case, retain his current attorney or authorize the attempt to incapacitate him without the procedural safeguards of state guardianship proceedings. If so, the case should be dismissed without prejudice.

**IV.    The Court should reconsider and grant Defendants' motions to dismiss on statute of limitations grounds.**

Plaintiff's only relevant condition is PTSD which was formally diagnosed in May 2017 with the causal event being a July 2016 stabbing. Dkt. #4 at 1. Bipolar disorder, anxiety, and other conditions were assessed and ruled out. Dkt. #4 at 1-3. His PTSD symptoms are effectively treated by medication. *Id*. at 3 ("Mr. Holland reported the Effexor has been very helpful with his symptoms of PTSD, in particular the anxiety and depressed mood often associated with PTSD.")

Mr. Holland's documented PTSD diagnosis and functional impairments, even if true, would not render him either legally incompetent or of an unsound mind for tolling.

Dr. Hughes's mental status exam and evaluation found, in relevant part:

● **Orientation/Disorientation**: oriented to time, place, and person
● **Physical Appearance**: appropriately dressed, fair hygiene, and looks actual age
● **Level of Consciousness**: awake and alert
● **Speech**: normal volume and tone throughout. Stuttering noted at the beginning of the evaluation but, once Mr. Holland felt comfortable with examiner, normal rate and rhythm. Pronunciation impaired due to history of traumatic injury to the cheek and throat.
● **Language**: expressive hesitant at first with frequent stuttering and difficulties word-finding. Once Mr. Holland self-reported comfort with the examiner, he was able to put

9

> thoughts into words and sentences; normal receptive: understands and comprehends language but did require examiner to repeat questions at times.
> ● **Thought Content**: no indication of delusions, preoccupations, or obsessions; no thought disorder
> ● **Thought Process:** logical, organized, and coherent
> ● **Perception**: no auditory hallucinations; no visual hallucinations
> ● **Cognitive**: normal concentration/memory registration; recent memory intact; some impairments in remote memory related to traumatic events
> ● **Attention Span and Concentration**: age-appropriate attention span/concentration
> ● **Insight**: age-appropriate insight
> ● **Judgement**: age-appropriate judgement
> ● **Fund of Knowledge**: awareness of current events and of past history.

Dkt. #4 at 5.   These factors overwhelmingly demonstrate sufficient mental capacity.

Dr. Hughes reached unsupported conclusions about Mr. Holland's "unsound mind" at specific times without having performed any cognitive assessment or reviewed assessments that were performed at TDCJ or by other clinicians and psychiatrists.

The only assessment Dr. Hughes performed and relied on to reach conclusions that Mr. Holland was in 2019 and remains of unsound mind is the Clinician Administered PTSD Scale CAPS-5 assessment.  Doc. #4 at Page 9.   The CAPS-5 is not a cognitive assessment tool.   "The CAPS-5 is a structured interview designed to make a categorical PTSD diagnosis, as well as to provide a measure of PTSD symptom severity."[1]

> There are three versions of the CAPS-5 corresponding to different time periods: past week, past month, and worst month (lifetime). The past week version of the CAPS-5 should be used only to evaluate PTSD symptoms over the past week. PTSD diagnostic status should be evaluated with the past month (for current PTSD) or worst month (for lifetime PTSD) versions of the CAPS-5.

Exhibit 2.

Dr. Hughes evaluated Mr. Holland on December 8 and 24, 2024.  Dkt. #4 at 1.   She

---

[1] Exhibit 1, *Clinician Administered PTSD Scale*, International Society for Traumatic Stress Studies, available at https://istss.org/clinical-resources/adult-trauma-assessments/clinician-administered-ptsd-scale/; Exhibit 2, https://www.ptsd.va.gov/professional/assessment/adult-int/caps.asp.

performed a CAPS-5 "Worst Event" assessment which is not a recognized or valid use of the CAPS-5 test.  Dr. Hughes performed a makeshift "lifetime" assessment by tallying the most severe symptoms from an unspecified "worst event" of Mr. Holland's entire lifetime.

Dr. Hughes purportedly assessed  Plaintiff's condition after his police encounter five years earlier using the CAPS-5 "past week" assessment.   "The *past week version of the CAPS-5 should be used only to evaluate PTSD symptoms over the past week*."  *Ibid.*  There is no CAPS-5 test that would allow Dr. Hughes in 2024 to assess Mr. Holland's condition after the police encounter in 2019.

Dr. Hughes reviewed records from TDCJ and two psychiatrists containing positive indications for PTSD but not any cognitive impairment.   These included assessments that documented PTSD, ruled out bipolar disorder, anxiety, and all other causes for his symptoms.  *Id.* at 2-3.   Notably absent is any reference to the cognitive assessments routinely performed upon intake at TDCJ.  Mr. Holland would have received a cognitive assessment within 14 days of admission to TDCJ prior to his 2017 diagnoses, and later in 2022 "to identify needs for treatment, mental retardation, or cognitive rehabilitation."[2]  TDCJ Guidelines mandated additional cognitive assessments after positive indications for PTSD were documented in 2017.  Dkt. #4 at 1-3.

Dr. Hughes relied on an "inability to sustain employment" contradicted by her report that Mr. Holland applied for disability in August 2016, stopped working as a construction flagger because "work ran out" in December 2016 and has relied on disability checks since.  Dkt. #4 at 3.

Other than the inapplicable and unreliable CAPS-5 assessments and unsupported conclusion regarding employment, Dr. Hughes's reported observations demonstrated that Mr.

---

[2]  See Texas Department of Criminal Justice. 2014, "Correctional Managed Health Care Policy Manual (E-35.1): Mental Health Appraisal for Incoming Offenders". Effective date October 30, 2013; reviewed April 2014. http://www.tdcj.state.tx.us/divisions/cmhc/docs/cmhc_policy_manual/E-35.01.pdf.

11

Holland was cognitively sound in every aspect. Dkt. #4 at 5.

In light of the now undisputed evidence that Mr. Holland's mental illness and disability did not result in cognitive impairment that rendered him mentally incompetent, the Court should reconsider and grant Defendants' motions to dismiss the case with prejudice on statute of limitations grounds.

## CONCLUSION AND PRAYER

Defendants respectfully pray that the Court reconsider and grant their motions to dismiss on statute of limitations grounds; alternatively, the case should be dismissed without prejudice. If the Court determines that a competency hearing and determination shall be held, Defendants request reasonable discovery and access to all relevant mental health and medical records in advance.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

CHRISTY MARTIN
Section Chief Torts/Civil Rights

Date: May 15, 2026.  By:  */s/ Melissa Azadeh*
MELISSA AZADEH
*Attorney in Charge*
Texas Bar No. 24064851
Federal Bar No. 1090186
Senior Assistant City Attorney
CITY OF HOUSTON LEGAL DEPARTMENT
P.O. Box 368
Houston, Texas 77002-0368
Tel. (832) 393-6270
Fax (832) 393-6259
melissa.azadeh@houstontx.gov
**ATTORNEYS FOR DEFENDANTS ANTONIO**
**OTERO, AARON PARR, AND LUCIA**
**GRACIA**

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of May 2026, a true and correct copy of the foregoing motion was delivered to all opposing counsel(s) by electronic filing of same in accordance with the District's ECF service rules, and alternatively via e-mail and/or facsimile transmission, or certified mail, return-receipt requested.

Brittany Francis
brittany@peoplescounsel.org
Peoples' Counsel
1900 W. Gray Street,
P.O. Box 130442
Houston, TX 77219

*/s/ Melissa Azadeh*
Melissa Azadeh

13